**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Curtis Fitzgerald HARDING,
Defendant–Appellant.**

**No. 91–50423.**

United States Court of Appeals,
Ninth Circuit.

Submitted July 10, 1992.*

Decided Aug. 3, 1992.

---

* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

David S. McLane, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Peter G. Spivack, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before: FARRIS, WIGGINS, and FERNANDEZ, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Curtis Fitzgerald Harding appeals his sentence of 120 months under the Sentencing Guidelines for possession with the intent to distribute cocaine base. He argues that the distinction made in the United States Sentencing Guidelines between cocaine base (crack) and cocaine hydrochloride (powder cocaine) violates the Equal Protection Clause of the United States Constitution. The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. This court has jurisdiction over the timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

## BACKGROUND

On February 11, 1991, Harding pled guilty to possession with intent to distribute 89.1 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). In return for his plea, the government agreed to dismiss indictments for the possession with intent to distribute 166 grams of powder cocaine and failure to appear. On February 22, 1991, Harding filed his sentencing memorandum, challenging the sentencing distinction between crack and powder cocaine in 21 U.S.C. § 841(b)(1)(A)(iii) as violative of the Equal Protection Clause. The district court held a hearing on the constitutionality of this distinction in the Sentencing Guidelines and concluded that the enhanced penalties associated with the possession of crack did not violate the Equal Protection Clause. Accordingly, Harding was sentenced on July 16, 1991 to 120 months imprisonment, the mandatory minimum penalty under 21 U.S.C. § 841(b)(1)(A)(iii). Harding appeals.

## DISCUSSION

Harding contends that the Sentencing Guidelines unconstitutionally differentiate between crack and powder cocaine. Harding argues that the statute should be subject to a "heightened, 'intermediate' level of scrutiny" under which the distinction in penalties would be shown not to further a

substantial legislative interest. At the same time, Harding argues that the Sentencing Guidelines would also fail a rational basis test because the distinction in penalties is arbitrary and irrational. We first determine the relevant scrutiny standard, and then apply it to the facts of this case.

## THE LEVEL OF SCRUTINY

■ The power to define federal crimes and set punishments rests solely with Congress. *United States v. Evans*, 333 U.S. 483, 486, 68 S.Ct. 634, 636, 92 L.Ed. 823 (1948); *United States v. Smith*, 686 F.2d 234, 239 (5th Cir.1982). For statutory challenges made on Equal Protection grounds, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate [government] interest." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citations omitted).

Harding argues that a heightened level of scrutiny should be applied to the statutory penalty scheme in question. For statutory classifications "that disadvantage a 'suspect class,' or that impinge upon the exercise of a 'fundamental right,' " the Supreme Court requires a showing of a compelling governmental interest. *Plyler v. Doe*, 457 U.S. 202, 216–217, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982). However, when no suspect class or fundamental right is affected, the federal courts "properly exercise[ ] only a limited review power over Congress, the appropriate representative body through which the public makes democratic choices among alternative solutions to social and economic problems." *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981).

Section 841(b)(1) implicates neither a suspect class nor a fundamental right. The statute permissibly differentiates on the basis of type of drug and quantity, providing higher penalties for offenses involving cocaine base than for offenses involving similar amounts of powder cocaine. *United States v. House*, 939 F.2d 659, 664 (8th Cir.1991). Furthermore, the statute does not infringe upon a fundamental or quasifundamental right.[1] "21 U.S.C. § 841(b) does not discriminate on the basis of a suspect classification or the exercise of a fundamental right, and thus does not require heightened scrutiny." *United States v. Thomas*, 900 F.2d 37, 39 (4th Cir.1990) (citing *United States v. Solomon*, 848 F.2d 156, 157 (11th Cir.1988) (per curiam)). The statutory sentencing provision is subject only to rational basis scrutiny.

## RATIONAL BASIS SCRUTINY

■ Harding argues that the statute is unconstitutional because it makes an arbitrary and irrational distinction between crack and powder cocaine. He contends that crack and powder cocaine are essentially the same drug and, accordingly, should not be subject to different sentencing provisions. Challenges to the constitutionality of a statute are reviewed de novo. *United States v. Savinovich*, 845 F.2d 834, 839 (9th Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

Although Equal Protection does not require that all people be treated identically, it does require that distinctions bear some relevance to the purposes for which they were made. *Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S.Ct. 760, 762–63, 15 L.Ed.2d 620 (1966). Under the rational basis test, the classification set out in section 841(b)(1) must bear some rational relation to a legitimate government interest or purpose. *Schweiker v. Wilson*, 450 U.S. at 230, 101 S.Ct. at 1080–81. In establishing a statutory classification, one need not, as Harding contends, supply empirical evidence to support a rational relationship. In fact, a "legislative body need not explicitly state its reasons for passing legislation so long as a court can divine some rational pur-

---

1. In *Plyler v. Doe*, 457 U.S. at 217–218, 102 S.Ct. at 2394–95, the Court recognized that infringements on certain "quasi-fundamental" rights, like access to public education, also mandate a heightened level of scrutiny. No such quasi-fundamental right is called into question in the sentencing of the defendant for possession with intent to sell crack cocaine.

pose." *United States v. Cyrus*, 890 F.2d 1245, 1248 (D.C.Cir.1989).

The burden falls on the party attempting to disprove the existence of a rational relationship between a statutory classification and a government objective. "[T]hose challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979). To challenge the Sentencing Guidelines successfully, the defendant in this case must be able to demonstrate that the relevance of the distinction between crack and powder cocaine is not even debatable. *See United States v. Carolene Products Co.*, 304 U.S. 144, 154, 58 S.Ct. 778, 784–85, 82 L.Ed. 1234 (1938) (a statutory classification based on a question which is at least debatable is valid). To do so, he cannot merely show that the legislature was mistaken in creating the classification, but rather he must prove that there exist no legitimate grounds to support the classification. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981).

Congress's decision to punish the sale of crack more severely than the sale of powder cocaine was based on a broad and legitimate basis.[2] Although crack and powder cocaine are different forms of the same drug, the routes of administration, their physiological and psychological effects, and the manner in which they are sold set the two forms of the drug apart. Crack is normally smoked in a glass pipe, while powder cocaine is most often ingested nasally. Because it is smoked, crack has a quicker and more intense effect on the

brain than powder cocaine ingested nasally, causing a greater desire for more.[3] Crack is also sold in smaller quantities and lower unit prices than powder cocaine, thereby reducing the financial barrier which had previously limited cocaine usage. *Crack Hearings* at 13–18 (testimony of Dr. Charles R. Schuster). *See also United States v. Buckner*, 894 F.2d 975, 978 n. 9 (8th Cir.1990) (discussing the relevant sections of the *Crack Hearings*).

In short, crack offers an easy, relatively inexpensive, and potent means for first-time users as well as addicts to experience a temporary high which leaves them craving more. *Crack Hearings* at 1–4, 13–24 (testimonies of Senator William V. Roth, Jr., Dr. Charles R. Schuster and Dr. Robert Byck). While powder cocaine was the drug of choice for the affluent, crack has brought cocaine to the streets, catering to the habits of both rich and poor in epidemic proportions. *Id.* The extent of this epidemic can be demonstrated by the development among police forces of special anti-crack units. For example, "[t]he special anticrack unit is unique in the [New York Police Department] since its formation marks the first time that one command has been designated to deal with one particular drug." *Crack Hearings* at 61 (testimony of Deputy Inspector Martin O'Boyle, New York Police Department).

The distinction between crack and powder cocaine embodied in § 841(b)(1) complements, rather than contradicts, the "market-oriented approach"[4] which classifies offenders according to the quantity rather than the purity of the drug possessed. This approach focuses on major traffickers and intermediate managers. *See United States v. Buckner*, 894 F.2d at 979. Congress made a rational decision based on

---

**2.** The information in this and the following paragraph, along with a wealth of other information, could have been relied upon by Congress, even if some people would debate its accuracy.

**3.** Although intravenous injection of dissolved powder cocaine may have even greater physiological and psychological effects, most cocaine users will smoke crack while few are willing to inject cocaine into their arms. *"Crack" Cocaine:*

*Hearing Before the Permanent Subcomm. on Investigations of the Senate Comm. on Governmental Affairs*, 99th Cong., 2d Sess. 13 (1986) [hereinafter *Crack Hearings*] (testimony of Dr. Charles R. Schuster).

**4.** This approach was deemed constitutional in *United States v. Hoyt*, 879 F.2d 505 (9th Cir.), *amended*, 888 F.2d 1257 (9th Cir.1989) and *United States v. Savinovich*, 845 F.2d 834.

evidence offered at the *Crack Hearings* that the possession with intent to sell fifty grams of crack should be the level at which one is deemed to be a "manager," while the same level for powder cocaine, carried and sold in larger quantities, should be five kilograms. *See* H.R.Rep. no. 845, 99th Cong, 2d sess. 12 (1986); 21 U.S.C. § 841(b)(1); *United States v. Malone,* 886 F.2d 1162, 1166 (9th Cir.1989).

The distinction between crack and powder cocaine is neither arbitrary nor irrational. In *United States v. Shaw,* 936 F.2d 412, 416 (9th Cir.1991) and *United States v. Van Hawkins,* 899 F.2d 852, 854 (9th Cir. 1990), we held that the distinction between cocaine base and powder cocaine made in § 841(b)(1) is not unconstitutionally vague because the two substances are objectively distinguishable. Furthermore, the penalties embodied in this statute further the legitimate government interest of eliminating controlled substance distribution and abuse. Crack presents a much larger problem than powder cocaine, both in the number of users and the drug's effects on the individual. *See generally Crack Hearings.* If the extent of the problem posed by the sale of crack and the need for more severe penalties than for powder cocaine are not clearly evident, these issues are at least highly debatable. This is enough to prevent invalidation of the statutory classification. *Carolene Products Co.,* 304 U.S. at 154, 58 S.Ct. at 784–85.

Every federal court of appeals that has confronted this issue has rejected an Equal Protection challenge to the sentencing provisions in § 841(b)(1). *See United States v. Lawrence,* 951 F.2d 751, 755 (7th Cir.1991); *United States v. House,* 939 F.2d at 664; *United States v. Avant,* 907 F.2d 623, 627 (6th Cir.1990); *United States v. Thomas,* 900 F.2d at 39–40; *United States v. Cyrus,* 890 F.2d at 1248–49; *United States v. Solomon,* 848 F.2d at 157. We join these circuits in upholding § 841(b)(1).

* The panel unanimously finds this case suitable for decision without oral argument. Fed.

## CONCLUSION

For the reasons mentioned above, we AFFIRM the district court's finding of a rational basis for the statutory classification and reject the Equal Protection challenge to § 841(b)(1).

AFFIRMED.