**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Oscar L. COLEMAN, aka Pancho, Defendant–Appellant.**

**No. 91–50299.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1993.

Decided May 13, 1994.

Elizabeth N. Brancart, Brancart & Brancart, Pasadena, CA, for defendant-appellant.

Lisa B. Lench, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: SKOPIL, HALL, and RYMER, Circuit Judges.

Opinion by Judge RYMER.

RYMER, Circuit Judge:

Oscar Lidell Coleman appeals his sentence on one count of possession of cocaine base with intent to distribute, to which he entered a conditional plea of guilty. He contends that the difference between statutory and Guidelines sentences for crack and powder cocaine is unconstitutional. We separately affirm his conviction in a memorandum disposition, and now affirm his sentence.

Coleman's base offense level for possession of 252.23 grams of crack (plus 2 kilograms of powder cocaine from two other transactions which were considered relevant conduct) was calculated at 34. He was sentenced to 210 months imprisonment, followed by a term of 5 years of supervised release.

He argues that U.S.S.G. § 2D1.1 and 21 U.S.C. § 841(b), both of which provide for higher sentences for defendants convicted of offenses involving cocaine base (crack) than for defendants convicted of crimes involving cocaine hydrochloride (powder cocaine), violate the Equal Protection Clause. Coleman attempts to distinguish *United States v. Harding*, 971 F.2d 410, 414 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993), in which we held that the distinction between crack and powder cocaine for sentencing purposes does not, on its face, violate the Equal Protection Clause, by characterizing his constitutional challenge as one based on the disparate impact of the application of § 2D1.1 and § 841(b) on himself and other black defendants. In short, Coleman contends that his sentence must be vacated because the crack/cocaine powder distinction is the direct result of an invidious, discriminatory intent on the part of Congress and the Sentencing Commission to punish more severely black narcotics offenders.

Coleman's argument fails. First, he offers no statistical evidence of disparate im-

pact.[1] However, even assuming that Coleman has offered sufficient evidence that the sentencing disparity between crack offenses and cocaine powder offenses has a disparate impact on black offenders, he has adduced no evidence of discriminatory intent or purpose. As the Seventh Circuit has said in a similar case, " 'even if a neutral law has a disproportionately adverse impact upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose.' " *United States v. Chandler*, 996 F.2d 917, 918 (7th Cir.1993) (per curiam) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979)).

Coleman urges us to infer purposeful racial discrimination on the part of Congress and the Sentencing Commission on the footing that both have consistently failed "to address the racially disparate impact of the Guidelines after being presented [with] many opportunities to do so." This reasoning was explicitly rejected by *Chandler. Id.* We agree that "awareness of consequences alone does not establish discriminatory intent." *Id.*

Because Coleman has not established discriminatory intent, we must sustain the sentencing scheme as long as it is rationally based. *Id.* Accordingly, we hold that 21 U.S.C. § 841(b) and U.S.S.G. § 2D1.1 are constitutional as applied to Coleman. *Harding*, 971 F.2d at 413 ("Congress's decision to punish the sale of crack more severely than the sale of powder cocaine was based on a broad and legitimate basis.").

**AFFIRMED.**

---

1. Coleman concedes that he provided no statistical evidence to the district court in support of his contention that the crack/cocaine powder distinction has a disparate impact on black defendants. In his brief on appeal, Coleman points only to a Justice Department publication which states that "crack cocaine remains a predominantly inner-city, urban phenomenon that is mainly confined to minority sections," and that "[l]arge-scale, interstate trafficking networks controlled by Jamaicans, Haitians and Black street gangs dominate the manufacture and distribution of crack." He also notes decisions from other jurisdictions which purport to rely on statistics and anecdotal evidence reflecting the racial composition of defendants arrested for possession of crack in Minnesota, the Western District of Texas, and the Western District of Missouri.