**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Shawn A. DUMAS, Defendant–Appellant.**

**No. 94–30313.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 1, 1995.

Decided Sept. 12, 1995.

---

Phillip J. Wetzel, Spokane, WA, for defendant-appellant.

Rolf H. Tangvald, Assistant United States Attorney, Spokane, WA, for plaintiff-appellee.

Before: WRIGHT, BOOCHEVER and THOMPSON, Circuit Judges.

Opinion by Judge THOMPSON; Concurrence by Judge BOOCHEVER.

DAVID R. THOMPSON, Circuit Judge:

Shawn A. Dumas, an African–American, appeals his sentence imposed under the Sentencing Guidelines following his conviction by guilty plea to possession of 8.8 grams of cocaine base ("crack" cocaine) with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He contends the sentencing provisions imposed by 21 U.S.C. § 841(b) and implemented by USSG § 2D1.1—which punish possession of crack cocaine more severely than possession of powder cocaine—violate the equal protection component of the Fifth Amendment's Due Process Clause. He argues the crack/powder cocaine distinction is unconstitutional as enacted because, although the distinction is facially neutral, it is a pretext for discrimination against African–Americans, who are more likely to possess crack than Whites. He also argues the more severe crack cocaine penalties are unconstitutional as applied because they are selectively enforced against African–American offenders.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We reject both Dumas's "as enacted" and "as applied" arguments, and we affirm his sentence.

## I

■ We have previously considered and rejected "as enacted" equal protection challenges to 21 U.S.C. § 841(b) and USSG § 2D1.1. *United States v. Harding,* 971 F.2d 410 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993). *See also United States v. Davis,* 36 F.3d 1424, 1437 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995). In *Harding,* we refused to apply a strict level of scrutiny to the sentencing distinction between crack and powder cocaine. *Harding,* 971 F.2d at 412. We noted that, on its face, section 841(b) implicates neither a suspect class nor a fundamental right. *Id.* Therefore, we reviewed the distinction only under the rational basis test, the lowest level of scrutiny applicable to equal protection challenges. We held the crack/powder cocaine distinction survived rationality review

because, although crack and powder cocaine are different forms of the same drug, Congress reasonably could have considered that crack's differing physiological and psychological effects, and its greater marketability, made crack a greater societal problem meriting more severe punishment. *Id.* at 413–14.

Dumas urges us to apply strict scrutiny in this case, and to uphold the crack/powder cocaine distinction only upon a showing that it promotes a compelling governmental interest. He correctly notes that a facially neutral law is nonetheless subject to strict scrutiny if it is an obvious pretext for discrimination. *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979). He argues the crack/powder cocaine sentencing scheme is a law infected with such pretext.

In support of this argument, Dumas offers evidence suggesting the heavy penalties for crack-related offenses disproportionately affect Blacks because Blacks are more likely to possess crack than Whites, who are more likely to possess powder cocaine. His evidence consists of statistics showing that Blacks comprise only 12% of the nation's total population, but are involved in 92% of all federal crack prosecutions. Similarly, in the Eastern District of Washington, 91% of crack cocaine prosecutions are brought against African–Americans, while less than 1% of the population is Black.

Dumas's statistical evidence of disparate impact has some appeal. *United States v. Moore,* 54 F.3d 92, 97 (2d Cir.1995) (finding similar statistics "irresistible."). As Dumas concedes, however, in order to trigger strict scrutiny he must show more than that the crack/powder cocaine sentencing disparity has a disproportionate impact on African–Americans. The Supreme Court has instructed that disparate impact alone is insufficient to support a finding of invidious racial discrimination in a facially neutral law. *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1977). The disparate impact must be traceable to a discriminatory legislative purpose. *Feeney,* 442 U.S. at 272, 99 S.Ct. at 2292.[1] " 'Discrimina-

---

**1.** In *United States v. Coleman,* 24 F.3d 37 (9th Cir.1992), *cert. denied,* —— U.S. ——, 115 S.Ct.

tory purpose' . . . implies more than intent as volition or intent as awareness of consequences." *Id.* at 279, 99 S.Ct. at 2296. The decisionmaker must have "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.*

In support of his discriminatory purpose argument, Dumas points to the racism which permeated the legislative debates leading to enactment of the Harrison Act of 1914, the first federal law to criminalize cocaine. This argument was squarely rejected in *United States v. Johnson*, 40 F.3d 436, 440 (D.C.Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1412, 131 L.Ed.2d 297 (1995).

The crack/powder cocaine sentencing distinction was adopted in 1986, with the passage of the Anti–Drug Abuse Act. The changes which occurred in American society between 1914 and 1986—changes brought about in part by successive Congresses and by the impact of the Voting Rights Act on the makeup of Congress itself—make it "anomalous" to ascribe to the 1986 Congress the racism of the Congress of 1914. *Id.*

With regard to the 1986 Congress, its decision to distinguish between crack and powder cocaine for sentencing purposes was supported by available scientific evidence which suggested crack was a more harmful form of the drug. *See Harding*, 971 F.2d at 413–14. Dumas is correct that conflicting testimony was presented to Congress. This is a far cry, however, from saying Congress had *no* basis for its decision to punish crack offenses more severely, and therefore the decision must have been racially motivated.

It is true that the Sentencing Commission has recently recommended to Congress that it reconsider the 100–to–1 sentencing ratio. This recommendation, however, was based on the fact that, *since* passage of the 1986 Act the distinction between crack and powder cocaine has been discredited by the medical community. The medical community's present disagreement with earlier congressional

testimony "does not establish discriminatory purpose, or for that matter, a lack of scientific support for Congress' [earlier] action." *Clary*, 34 F.3d at 714. *See also Moore*, 54 F.3d at 99. Moreover, the Sentencing Commission's report to Congress specifically states there is no evidence to support a finding that racial animus undergirded the penalty structure chosen by the 1986 Congress. *See United States v. Jackson*, 59 F.3d 1421, 1424 n. 5 (2d Cir.1995).

Dumas also argues the 1986 Congress' discriminatory intent is evidenced by the hasty manner in which it adopted the crack/powder cocaine distinction. He argues the legislation was rushed through Congress in a mere five weeks, without being subjected to the regular panoply of committee hearings. He contends the original proposal, which had called for a 50–to–1 sentencing disparity, was arbitrarily doubled to emphasize congressional intent to be "tough on crime." He argues this was a "frenzied" response to public fears spawned by rampant media reports, some of which were entered into the congressional record, regarding the nexus between crack, crime and African–Americans.

We reject this argument. As other circuits have held, "[i]t is too long a leap from newspaper and magazine articles to an inference that Congress enacted the crack statute because of its adverse effect on African–American[s]." *United States v. Clary*, 34 F.3d 709, 713 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1172, 130 L.Ed.2d 1126 (1995). *See also United States v. Cherry*, 50 F.3d 338 (5th Cir.1995). Congress' undeniable haste in passing the 1986 Act is as easily explained by the dangers posed by the perceived crack epidemic—and the need to take prompt action to combat it—as by discriminatory racial animus. *Clary*, 34 F.3d at 713; *Johnson*, 40 F.3d at 440; *Moore*, 54 F.3d at 98–99.

■ We are satisfied Congress was not motivated by racial animus when it enacted the crack/powder cocaine sentencing dispari-

---

261, 130 L.Ed.2d 181 (1994), we followed *Harding* and rejected an equal protection challenge to section 841(b) and § 2D1.1 because, although the defendant alleged invidious racial discrimina-

tion, he offered no evidence of disparate impact or discriminatory legislative intent. *Coleman*, 24 F.3d at 38–39.

ty. Therefore, strict scrutiny is not required. We have previously held the sentencing disparity survives rational basis review. *Harding,* 971 F.2d at 412–14. We therefore reject Dumas's contention that, as enacted, section 841(b) and § 2D1.1 violate equal protection.

## II

■ Dumas contends that, even if the crack/powder cocaine sentencing disparity is not unconstitutional as enacted, it violates equal protection as applied because the more severe crack provisions are selectively enforced against African–American offenders. In support of this argument, Dumas again points to statistics showing that 91% of all federal crack cocaine prosecutions in the Eastern District of Washington are brought against African–Americans, who comprise only 1% of the population. He also contends White crack offenders are more likely to be prosecuted in state court, where they face less severe penalties than they would in federal court. He presents federal and state prosecution records indicating that, while 91% of federal crack prosecutions are against Black defendants, only about 67% of state crack prosecutions are against Blacks. On the other hand, White defendants are involved in 29% of state crack prosecutions, but in only 9% of federal crack prosecutions. These statistics, Dumas contends, indicate that in the Eastern District of Washington, the decision whether to prosecute a crack offender and, if so, whether to do so in state or federal court, is made on the basis of race. We disagree.

■ Equal protection is violated when the decision to prosecute is based upon impermissible factors such as race. *Wayte v. United States,* 470 U.S. 598, 609, 105 S.Ct. 1524, 1532, 84 L.Ed.2d 547 (1985). To prove selective prosecution based on race, however, the defendant must show both discriminatory effect and discriminatory purpose. *Id.*

Dumas may have established discriminatory effect. His statistics show that crack cocaine prosecutions in federal court disproportionately impact Blacks. *See United States v. Armstrong,* 48 F.3d 1508 n. 1 (9th Cir.1995) (statistical disparity suffices to sat-isfy effect prong of *prima facie* case of selective racial prosecution; defendant need not affirmatively show others similarly situated were not prosecuted), *petition for cert. filed,* July 27, 1995. *But see United States v. Reese,* 60 F.3d 660, 662 n. 2 (9th Cir.1995) (suggesting this language in *Armstrong* was limited to cases in which a defendant is seeking discovery for a selective prosecution claim); *United States v. Marshall,* 56 F.3d 1210, (9th Cir.1995) (denying a discovery request, without discussing *Armstrong,* because the defendant failed to establish others similarly situated were not prosecuted).

Dumas, however, has offered no evidence of discriminatory purpose. He argues, based on *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), and *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), that this is one of those "rare" cases in which evidence of disparate impact suffices to prove discriminatory intent. We disagree.

Unlike in *Yick Wo* and *Gomillion,* here the disparate impact is explainable on grounds other than race. *See United States v. Thurmond,* 7 F.3d 947, 952 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1311, 127 L.Ed.2d 661 (1994); *United States v. Byse,* 28 F.3d 1165, 1170 n. 8 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 767, 130 L.Ed.2d 663 (1995); *Johnson,* 40 F.3d at 441. The government has presented evidence that the decision to prosecute a crack offender in federal court is guided by neutral criteria. These criteria include whether the drug quantity involved in the offense exceeds five grams, whether the defendant has any gang affiliation, and whether a firearm is used or is present during commission of the offense.

The government has also presented evidence that of the 27 White crack defendants who were prosecuted in state court, only one—based on the government's criteria—would have qualified for prosecution in federal court. On the other hand, 24 of the Black defendants who were actually prosecuted in state court during the same period could have been prosecuted federally, but they were not. These statistics refute Dumas's contention that in the Eastern District of

Washington the decision to prosecute federally is made on the basis of race.

## III

We reject Dumas's equal protection challenges to 21 U.S.C. § 841(b) and USSG § 2D1.1. The statute and sentencing guideline are not racially discriminatory either as enacted or as applied.

AFFIRMED.

BOOCHEVER, Circuit Judge, concurring.

Although I find the result in this case to be shocking, in that the punishment for the crack cocaine offense is the same as the punishment that would have been imposed for a comparable offense involving 100 times as much powder cocaine, and the evidence indicates that 92% of federal prosecutions for crack cocaine, which require the enormously higher terms of imprisonment, involve African-Americans, I am compelled to concur.

The result in this case, as in many equal protection challenges, depends on whether a rational basis or strict scrutiny test applies. It is extremely difficult, if not impossible, to find an improper discriminatory purpose when an act has been passed by Congress, and the Supreme Court has made clear that such a high hurdle must be cleared for application of the strict scrutiny test. See, *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292–93, 60 L.Ed.2d 870 (1979). If it were an open question in this circuit, one might find that the imposition of the 100 to 1 ratio with its invidious racial effects is so arbitrary and capricious as to lack a rational basis. We have resolved that issue, however, in *United States v. Harding*, 971 F.2d 410 (9th Cir.1992) (holding that the statutory distinction between crack and powder cocaine was rationally based on differences between the two forms of the drug). I note, however, that *Harding* did not have the statistical evidence presented in this case, and that recent studies cast doubt on the conclusion that there is a significant difference. While it may not help those in Dumas' situation, the Sentencing Commission has recommended eliminating the sentencing disparity based on type of cocaine,

and that recommendation will become law on November 1, 1995, unless other action is taken by Congress before that date. There also is pending a bill in the House equalizing the sentences for the different types of cocaine. *See* H.R. 1264, 104th Cong., 1st Sess. (1995). Thus, what appears to me to be an unjustified distinction with appalling racial effects may soon be eliminated.