**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darryl E. JACKSON, Defendant–
Appellant.**

**No. 95–30211.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1996.

Decided May 28, 1996.

Thomas M. Gannon, United States Department of Justice, Washington, DC, and Ronald W. Skibbie, Assistant United States Attorney, Spokane, Washington, for plaintiff-appellee.

Brian C. O'Brien, Dorn & O'Brien, Spokane, Washington, for defendant-appellant.

Before: LAY,* WRIGHT and LEAVY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

Jackson was convicted of possession of cocaine base with intent to distribute and conspiracy to possess cocaine base with intent to distribute. On appeal he complains of several trial errors and argues that his sentence is unconstitutional. We affirm.

**FACTS**

In October 1994, the Spokane police orchestrated several drug transactions in which their confidential informant ("CI") bought crack cocaine from Steven Brown. On Octo-

ber 19, Brown's girlfriend, Angela Brasch, dropped him off at a gas station for another transaction. The CI was expecting Brown to give him crack in exchange for a handgun, but Brown demurred, saying he had to replenish his drug supply. He offered instead to give the CI cash for the gun. They made the trade, then Brown was arrested. He told the police they could find Brasch at Tracy Nowacki's apartment.

The police found Brasch sitting with Jackson in Brown's car outside Nowacki's apartment. While the police watched, Jackson went into the apartment and came out again. After he returned, they searched the car and found a bag containing 4.3 grams of cocaine. They arrested Brasch and Jackson.

With Nowacki's consent, the police searched the apartment. They found 852 grams of crack cocaine behind the freezer compartment of her refrigerator. They also found a cell phone, a pager, a black bag containing $2,000 and a pager receipt in the name of John Davis (an alias Jackson used); $6,400 in a denim vest in the closet, and a digital scale.

Brown, Brasch and Jackson were indicted for conspiracy to possess cocaine base with intent to distribute and possession of cocaine base with intent to distribute. Brown and Brasch pleaded guilty and testified against Jackson.

At trial, Nowacki testified that Jackson lived with her and her boyfriend Kenny Conway from time to time. He put a bag of crack cocaine in her refrigerator in December, 1993. He and Conway (who was Jackson's cousin and was in jail at the time of Jackson's arrest) regularly took drugs from the refrigerator, weighed them and bagged them. Nowacki drove Jackson to several drug transactions while he stayed with her. He had a key to the apartment and came by regularly to pick up crack. Even when he was not sleeping at her apartment, he kept drugs there, along with the black bag in which the police found the money and pager receipt. She also testified that on October

---

* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

19, just before his arrest, Jackson came to her apartment and got something out of the refrigerator.

Brasch testified that she dated Jackson from January to March, 1994. When they broke up, she took some of his belongings, including five ounces of crack. She said that when Jackson learned of the theft, he threatened to kill her or members of her family unless she sold drugs for him to work off her debt. She made several sales between March and October. She told the jury that on the day of their arrest she was meeting Jackson to pick up a quarter-ounce of cocaine for Steve Brown.

Jackson testified at trial. He claimed to have no knowledge of the cocaine in Nowacki's refrigerator. He said he was meeting with Brasch, who was pregnant, to discuss arrangements for their unborn child.

Jackson was convicted of conspiracy to possess 4.3 grams of cocaine base with intent to distribute, and of possession of 856.3 grams with intent to distribute. He was sentenced to 188 months.

## DISCUSSION

### I. "Immunized Witness" Instruction

Nowacki was never arrested in connection with the cocaine found in her apartment. In return for her cooperation, the government paid her $700 for relocation expenses. The court was prepared to instruct the jury that, because Nowacki received "compensation" from the government, it should "examine Miss Nowacki's testimony with greater caution than that of ordinary witnesses."

The defense argued that in addition to paying her, the government implicitly immunized Nowacki, promising that she would not be prosecuted if she testified that the drugs belonged to Jackson. Defense counsel suggested an instruction that would identify Nowacki as an immunized witness and caution the jury to examine her testimony with greater care and consider her motive to falsify.

The court found that there was no evidence in the record that Nowacki had been immunized. The judge agreed, over government objection, to replace the word "compensation" in the instructions with the word "benefits" so as to "allow both of you to argue your theories of the case." Jackson argues that this instruction was insufficient to permit him to present his theory that Nowacki was effectively immunized and had a motive to implicate him.[1]

■ "It is settled law that a defendant is entitled to have the judge instruct the jury on his theory of the case, provided that it is supported by law and has some foundation in the evidence." *United States v. Sarno*, 73 F.3d 1470, 1485 (9th Cir.1995) (quotations omitted). We review for abuse of discretion the district court's "determination of the factual basis for a requested instruction," as well as the "form in which the court has expressed the defendant's theory of the case." *Id.*

■ This record reveals no evidence that Nowacki was immunized, and we therefore find no error in the court's instruction. Contrary to Jackson's argument, the word "benefits" gave his implicit immunity theory the weight it deserved.[2]

---

1. The instruction given was: "You have heard testimony that Tracy Nowacki, a witness, has received benefits from the government in connection with this case. In evaluating her testimony, you should consider the extent to which it may have been influenced by the receipt of benefits from the government. You should examine Miss Nowacki's testimony with greater caution than that of ordinary witnesses. Although it is ultimately up to you to decide how much weight her testimony deserves."

2. Jackson also argues that Nowacki was an accomplice, and that the jury should have been instructed to view her testimony with caution for that reason. Because the accomplice argument was not raised at trial, we review for plain error. Fed.R.Crim.P. 52(b). The cautionary instruction the court gave with respect to Nowacki's testimony is nearly the same as the one it gave regarding Jackson's charged accomplices, Brasch and Brown, and Jackson's counsel was free to argue that Nowacki was an accomplice. We find no error that could have "affected the outcome of the District Court proceedings." *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993).

## II. Prosecutorial Vouching

Jackson contends that the prosecutor vouched for Nowacki's credibility in his closing argument. Because there was no objection to his comments, we review for plain error. We reverse only if the error is plain, affects substantial rights, and "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 736, 113 S.Ct. at 1779 (quotation and alteration omitted).

"As a general rule, a prosecutor may not express his ... belief in the credibility of government witnesses. Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necoechea,* 986 F.2d 1273, 1276 (9th Cir.1993) (citations omitted). But the prosecutor must have "reasonable latitude in fashioning closing arguments," and can make reasonable inferences based on the evidence. *Id.*

Jackson points to two incidents of vouching. In one, the prosecutor told jurors, "I imagine the police officers would have been a little bit upset if it was found out later that Miss Nowacki had been lying to them [about ownership of the cocaine]." This was not vouching. It was a reasonable inference from the evidence. The police had questioned Nowacki and relied on her account. The prosecutor gave no personal assurance that she was telling the truth and never suggested that the police would be able to determine whether she lied. *Cf. United States v. Roberts,* 618 F.2d 530, 533 (9th Cir.1980) (improper for prosecutor to tell jury that police were monitoring the trial to determine that witness testified truthfully); *United States v. Shaw,* 829 F.2d 714, 717 (9th Cir.1987) (finding vouching where prosecutor implied that he would be able to determine whether witness was testifying truthfully).

The prosecutor also told jurors that "[t]here was no benefit of lack of incarceration to Ms. Nowacki in this case. She's not guilty of a crime." He argued that she did not possess the cocaine under the legal definition of "possession" laid out in the jury instructions.

Even if we were to hold that these comments were vouching, we would not reverse because they did not "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 736, 113 S.Ct. at 1779. In deciding whether to reverse for vouching, we consider the form of the statement, the degree of personal opinion asserted, the seriousness of the vouching, the timing, the importance of the witness and the vouching to the case, the extent to which the witness's credibility was attacked and any curative instructions. *Necoechea,* 986 F.2d at 1278. Few of these factors favor Jackson.

The prosecutor's remarks were an invited response to the defense's attempt to paint Nowacki as an uncharged accomplice. *United States v. de Cruz,* 82 F.3d 856, 863 (9th Cir.1996) (holding prosecutor's improper rebuttal argument to be harmless in part because it was an invited response). There was abundant evidence against Jackson, and although Nowacki was an important witness, her testimony was corroborated in most respects by physical evidence and by Brasch. The jury was instructed to view her testimony with caution and was told that the arguments of counsel were not evidence. There was no plain error in allowing this argument.

## III. Evidence of Other Acts

Jackson moved the court to prohibit any mention of his alleged membership in the Crips gang, his prior arrest for cocaine possession at a notorious nightclub and any prior drug sales. After hearing argument, the court ruled that his gang membership and prior arrest could not be mentioned but that incidents of prior drug sales could be admitted "as [they] relate[ ] to issues concerning [the conspiracy count] in this matter."

Jackson contends that the district court abused its discretion by admitting this evidence. He argues that the evidence was inadmissible under Federal Rules of Evidence 404(b) and 403. We review for abuse of discretion the court's decision to admit this evidence, but we consider de novo whether

evidence is directly relevant to the crime charged or relevant only to "other crimes." *United States v. Santiago*, 46 F.3d 885, 888 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995).

■■■ Under Rule 404(b), evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). It may, however, be admitted for other purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." *Id.* Rule 404(b) "is a rule of inclusion." *United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir.1995) (quotation omitted). Unless the evidence of other crimes tends only to prove propensity, it is admissible. *United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir.1991); *see also Meling*, 47 F.3d at 1557 ("[E]vidence is admissible under Rule 404(b) if it is relevant to an issue in the case other than [the] defendant's criminal propensity"). We must consider several factors to determine if Rule 404(b) permits admission, such as whether the evidence proves a material element of the offense charged, whether it is similar to the offense charged, whether there is sufficient evidence of the prior conduct and temporal proximity. *United States v. Basinger*, 60 F.3d 1400, 1408 (9th Cir.1995).

■■■ The disputed evidence satisfies these requirements. The government introduced evidence only of similar drug transactions that involved drugs stored in Nowacki's refrigerator, or that involved Jackson and the coconspirators. This evidence tended to prove the material elements of knowledge and intent. It also proved opportunity, plan and preparation. It served to link the coconspirators and explain their criminal relationship. Jackson does not contend that there was insufficient evidence of the prior conduct. Finally, the court admitted prior acts from only a limited time period.[3]

■■■ Jackson also contends that the evidence of prior drug transactions violated Rule 403 and that the court never engaged in an explicit Rule 403 analysis. *See Meling*, 47 F.3d at 1557 ("Evidence admissible under Rule 404(b) may nevertheless be excludable under Rule 403 if its prejudicial impact outweighs its probative value."). The district court, however, is not required to recite Rule 403 for the record. *United States v. Ono*, 918 F.2d 1462, 1465 (9th Cir.1990). "It is enough that this court can conclude, based on a review of the record, that the district court considered Rule 403's requirements." *Id.* Here, immediately before the court's initial decision to admit the evidence, Jackson's counsel argued repeatedly that it was unduly prejudicial. We find that the court "implicitly made the necessary finding." *United States v. Ramirez–Jiminez*, 967 F.2d 1321, 1326 (9th Cir.1992) (finding implicitly made where trial brief reminded judge that probative value and unfair prejudice must be balanced); *see also Ono*, 918 F.2d at 1465. There was no error.[4]

## IV. Cocaine and Cocaine Base

Section 841(b)(1)(A) prescribes a 10–year minimum penalty for any person convicted of possession with intent to distribute

> (ii) 5 kilograms or more of a mixture or substance containing a detectable amount of-
>
> ... (II) cocaine, its salts, optical and geometric isomers, and salts of isomers;
> ...
>
> (IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III); ...

In these circumstances, the instruction was sufficient.

**3.** Jackson argues that the court did not give an adequate limiting instruction. Although he never requested an instruction at trial, the court *sua sponte* told the jurors that they must "consider the evidence in the case for only those purposes for which it has been admitted" and cautioned that they must "[r]emember that the defendant is on trial only for the crimes charged. Not for anything else." Jackson referred specifically to the judge's instructions in his closing argument.

**4.** Jackson argues that the court should have excluded evidence of a trip he and Brasch made to buy drugs in California. We do not determine whether the court properly admitted this evidence because any error was harmless in light of the strength of the government's case.

(iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base....

21 U.S.C. § 841(b). Jackson was sentenced under subsection (iii) for possession of cocaine base.

■■■ At his sentencing hearing, Jackson presented expert testimony that a substance containing "cocaine" necessarily contains "cocaine base." He also submitted evidence from the record of *United States v. Davis,* 864 F.Supp. 1303 (N.D.Ga.1994). In that case, the district court, presented with expert testimony that cocaine and cocaine base were synonymous, held that section 841(b) provides two different penalties for the same offense. It applied the rule of lenity and sentenced the defendant under the provisions for "cocaine" rather than "cocaine base." *Id.* at 1309.

Jackson argues that we should follow *Davis.* We decline to do so, as have the other circuit courts that have faced this issue. *See, e.g., United States v. Booker,* 70 F.3d 488, 489–91 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1334, 134 L.Ed.2d 484 (1996); *United States v. Jackson,* 64 F.3d 1213, 1219–20 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *United States v. Fisher,* 58 F.3d 96, 98–100 (4th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 329, 133 L.Ed.2d 229 (1995).

The government does not dispute Jackson's argument on scientific grounds. It concedes that, to a chemist, cocaine and cocaine base are the same substance.[5] But it counters that the two terms are not "legislatively synonymous," and that Congress intended

the term "cocaine base" to denote the smokable form of cocaine.

*United States v. Shaw,* 936 F.2d 412, 414–16 (9th Cir.1991), supports this position. In that case, the defendants argued that they could not be sentenced under the "cocaine base" provisions because the government had not proven that the cocaine they possessed contained a hydroxylion. A hydroxylion is a necessary component of a "base," as that term is used in chemistry. We held that the term "cocaine base" is not limited to substances that test basic rather than acidic. Looking to the legislative history of section 841(b), we found that Congress intended "cocaine base" to refer to "cocaine that can be smoked, unlike cocaine hydrochloride." *Id.* at 416. We held that as long as cocaine and cocaine base, as those terms were understood by Congress, are "objectively distinguishable," the statute is not vague. *Id.*

*Shaw* implies that the distinction between cocaine and cocaine base may be a practical one and not a scientific one: we are not bound to construe the statute as if it were a chemistry text.[6] *Shaw* also provides a workable distinction between "cocaine" and "cocaine base" as those terms are used in the statute: "cocaine base" is the form of the drug that is intended to be smoked. As the Seventh Circuit remarked in *Booker,* "Congress intended 'cocaine base' to mean crack." 70 F.3d at 493. By crack, the 1986 Congress meant "a new, smokable form of cocaine that was more dangerous than powder cocaine, less expensive and highly addictive." *Id.*[7]

Jackson argues that this court should not look to the legislative history to resolve any ambiguity in a criminal statute. *See United States v. R.L.C.,* 503 U.S. 291, 308, 112 S.Ct.

---

**5.** The Seventh Circuit, confronted with similar expert testimony, explained in detail the scientific basis for the defendant's argument. *Booker,* 70 F.3d at 489–91.

**6.** Jackson argues that *Shaw* is not controlling because it was based on the scientifically incorrect premise that cocaine hydrochloride contains no cocaine base. We do not address this question because we draw from *Shaw* no conclusion about the chemical composition of cocaine and cocaine base. Rather, we follow only *Shaw's* holding that the "correct definition of cocaine base ... as a matter of statutory interpretation" is grounded in congressional intent, and not in

chemistry. Of course, the statute must adequately convey this intent so that it provides fair notice of what conduct is prohibited. *Papachristou v. Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). Jackson does not argue that the statute failed to give such notice.

**7.** There was expert testimony that cocaine hydrochloride is technically smokable. But the expert made clear that it is not intended to be smoked, and that, "if given a choice, no one would smoke cocaine hydrochloride because it would burn their nostrils and is very caustic and very little of that would get in their system."

1329, 1339–40, 117 L.Ed.2d 559 (1992) (Scalia, J., concurring) (arguing that legislative history cannot clarify an ambiguous criminal statute). But the rule of lenity applies only if " 'reasonable doubt persists even after resort to the language, structure, legislative history and motivating policies of the statute.' " *Id.* at 305–06, 112 S.Ct. at 1336 (plurality opinion) (quoting *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990)). The Supreme Court has not rejected the use of legislative history in this context, and Ninth Circuit precedent makes use of it to define "cocaine base." *See Shaw,* 936 F.2d at 415–16.[8]

Section 841(b) draws a sufficient legal distinction between "cocaine" and "cocaine base." We need not resort to the rule of lenity.

## V. Rationality of Sentencing Disparity

 Jackson argues that the 100:1 ratio in the sentencing provisions for crack and powder cocaine offenses violates the Equal Protection Clause. He acknowledges that we have already rejected this argument. *See United States v. Harding,* 971 F.2d 410, 413 (9th Cir.1992), *cert. denied,* 506 U.S. 1070, 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993). He contends that the rational basis for the 100:1 ratio has eroded because the Sentencing Commission, after some study, recently recommended that the disparity be eliminated. Congress disapproved its recommendation. Pub.L. No. 104–38, 109 Stat. 334 (1995).[9]

We do not agree that the Commission's report, or Congress's decision to reject it,

affects the precedential value of our ruling that Congress had a rational basis for the 100:1 ratio. Several members of the committee dissented from the recommendation to eliminate the sentencing disparity. They argued that, although the differential was too high, there are good reasons to treat crack differently from powder cocaine, including the quicker and higher "highs" from crack, the youth of its users and sellers, the low per-dose cost that leads to easy distribution and the violence associated with distribution of the drug. These reasons are essentially those that have been attributed to Congress's initial decision to enact the 100:1 ratio. *See Harding,* 971 F.2d at 413–14. That decision was rational, even though it differs from the Sentencing Commission's current recommendation regarding the magnitude of the disparity. *Id.; accord, Booker,* 70 F.3d at 494 n. 24.[10]

## CONCLUSION

We affirm. There were no trial errors requiring reversal. We find no ambiguity in section 841(b) that would require resort to the rule of lenity and there is still a rational basis for the 100:1 cocaine base/cocaine sentencing disparity.

**AFFIRMED.**

---

**8.** We note that it may be unnecessary to consult the legislative history. At least one other court has concluded that section 841(b) is not ambiguous without relying on it. In *United States v. Fisher,* 58 F.3d 96, 99 (4th Cir.1995), the Fourth Circuit employed the canon of statutory construction that a court should "give meaning to all statutory provisions and seek an interpretation that permits us to read them with consistency." It reasoned that clause (ii), which prescribes the penalty for cocaine must necessarily exclude cocaine base, because clause (iii), which gives heavier penalties for cocaine base, would otherwise be rendered superfluous. Because the court found the statute to be unambiguous, it found there was no need to look to the legislative history. *Id.*

**9.** Although Congress rebuffed the Commission's suggestion that the disparity be eliminated en-

tirely, it did request that the Commission study the matter further and recommend a sentencing ratio of less than 100:1 but more than 1:1. This directive indicates that Congress may at a later time consider changing the sentencing structure, but it does not affect our decision that there is a rational basis for the 100:1 ratio.

**10.** Jackson also argues that because the sentencing disparity has a disparate impact on African–Americans, the court should apply "active" or "biting" rational basis scrutiny. This novel suggestion is foreclosed by *United States v. Dumas,* 64 F.3d 1427, 1430–32 (9th Cir.1995) (applying rational basis review where defendant could not make out case of racially discriminatory intent in enactment or application of section 841).