97 F.3d 1462
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jae Shik CHA, Defendant-Appellant.
 No. 95-30206.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 6, 1996.
Decided Sept. 16, 1996.
 
 Before: WRIGHT, BEEZER, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Jae Shik Cha appeals his conviction and sentence for conspiracy to distribute methamphetamine ("ice") and money laundering. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.
 
 I. Rule 404(b) "Other Acts" Evidence
 
 3
 Cha argues that the district court improperly admitted evidence of prior bad acts which should have been excluded under Fed.R.Evid. 404(b). Evidence is not considered Rule 404(b) "other crimes" evidence if it is "inextricably intertwined" with the crime charged. United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir.1992). We review de novo whether evidence falls within the scope of Rule 404(b). United States v. Kallin, 50 F.3d 689, 693 (9th Cir.1995).
 
 
 4
 Essential elements of money laundering include that the money comes from an illegal activity, and that defendant had the intent to conceal or disguise the nature of the money. 18 U.S.C. § 1956. Evidence that Cha bought two Mercedes vehicles with cash and failed to meet reporting requirements showed that Cha knew of the reporting requirements and designed transactions that would avoid detection of the drug proceeds. Evidence that Cha failed to complete customs reports for carrying currency out of the United States, and evidence that he failed to report foreign accounts or interest earned on those accounts to the IRS, also proved that Cha had an intent to conceal money. Likewise, evidence that Cha structured his deposits in amounts less than $10,000 in order to avoid bank reporting requirements was offered to prove an intent to conceal money. Cha's tax returns, showing insufficient legitimate income to support the $4.5 million laundered through the Hong Kong account, were offered to show that the money came from drug transactions. All of the contested evidence was "inextricably intertwined" with the charged conspiracy, and therefore was not subject to Rule 404(b).
 
 
 5
 Cha also argues that the evidence outlined above should have been excluded under Federal Rule of Evidence 403. The challenged evidence was highly relevant to show that Cha had the intent to launder money, and that the money came from illegal sources. See Ramirez-Jiminez, 967 F.2d at 1327-28. The district court did not abuse its discretion in admitting the evidence.
 
 II. Prosecutorial Misconduct
 
 6
 We review claims of prosecutorial misconduct for harmless error if an objection was made at trial; if no objection was made at trial, review is for plain error. United States v. Hinton, 31 F.3d 817, 824 (9th Cir.1994), cert. denied, 115 S.Ct. 773 (1995).
 
 A. Vouching
 
 7
 Impermissible vouching occurs when the prosecutor places "the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggests that information not presented to the jury supports the witness's testimony." United States v. Jackson, 84 F.3d 1154, 1158 (9th Cir.1996) (citation and internal quotation marks omitted).
 
 
 8
 Cha first challenges the prosecutor's references to witnesses' plea agreements. The prosecutor was free to introduce evidence of the plea agreements because the defense challenged the witnesses' credibility based on their plea bargains. See United States v. Monroe, 943 F.2d 1007, 1013-14 (9th Cir.1991), cert. denied, 503 U.S. 971 (1992).
 
 
 9
 Cha argues that it was impermissible vouching for the prosecutor to state in rebuttal argument: that "[i]f [government witnesses] tell the truth, they get the benefit of their deal. If they lie, they don't"; that Leonard Kang and Tae Choe "have no motive to lie and, in fact, if they lied, they could go back to jail for perjury"; and that if Ricky Seo lied "all deals were off" and Seo could be charged with perjury.[1] None of these comments constitute vouching because the prosecutor did not give any personal assurance of the truth, or imply that he could determine whether the witnesses lied. Jackson, 84 F.3d at 1158.
 
 
 10
 Cha also challenges the prosecutor's rebuttal argument statements that Ki Woon Kim's sentence reduction depended upon another judge finding that Kim had testified truthfully and that "all deals were off" with Ki Yong Lee and Sang Jin Cha if Judge Rothstein, who was presiding at trial, found that they had lied.[2] Neither of these statements personally guaranteed a witness's veracity or suggested that information not before the jury supports the witness's testimony. Jackson, 84 F.3d at 1158. Compare United States v. Kerr, 981 F.2d 1050 (9th Cir.1992) (prosecutor suggested that by accepting the witnesses' plea agreements the district court had been satisfied as to the witnesses' truthfulness).
 
 B. Other Prosecutorial Misconduct
 
 11
 Cha argues that the government engaged in several other instances of prosecutorial misconduct. None of the actions rise to the level of reversible error.
 
 1. "Other act" evidence
 
 12
 Cha argues that the prosecutor introduced 404(b) "other act" evidence without prior notice. As stated above, the evidence Cha challenges is not "other acts" under 404(b) but is "inextricably intertwined" with the charged offenses. Therefore, the government did not violate its agreement to give Cha prior notice of 404(b) evidence.
 
 2. Comments on Cha's Post-Arrest Silence
 
 13
 Cha argues that the government improperly elicited testimony from DEA Agent Yong Chin commenting on Cha's right to remain silent. Chin stated, "Once we arrest somebody, obviously we give them their rights, and once they refuse to answer us--." A prosecutor cannot elicit comments regarding a defendant's invocation of his post-arrest right to remain silent. Doyle v. Ohio, 426 U.S. 610 (1976). In this case, however, Chin only commented on an abstract defendant's silence ("once they refuse to answer us"), and did not say that Cha had refused to answer.
 
 3. Credibility Questioning
 
 14
 Cha was asked if Min Ryu lied when she testified, and whether Cha's son would be lying if he testified in agreement with the contents of a stipulation. Cha objected to these statements at trial, so we review them for harmless error.
 
 
 15
 Cha cites Hinton, 31 F.3d at 824-25, and United States v. Richter, 826 F.2d 206, 208-09 (2d Cir.1987), for the proposition that it is improper for a prosecutor in cross examination to ask the defendant to speculate as to whether another witness is lying. In Richter, the Second Circuit reversed a conviction when the prosecutor repeatedly asked the defendant whether law enforcement officers were mistaken or had lied on points of testimony that were inconsistent with defendant's testimony.
 
 
 16
 This case is much closer to the facts of Hinton than those of Richter. Like Hinton, in this case Cha never stated that he believed Min Ryu or Yong Hwan Cha was lying. While we agree that the prosecutor's comments may have been improper, any error was harmless, especially in light of the court's comments in front of the jury that, "There's something in between being a lie."
 
 
 17
 Cha also challenges the prosecutor's argument that either Ryu or Cha was lying. This argument was a permissible inference from the evidence. United States v. Molina, 934 F.2d 1440, 1445 (9th Cir.1991).
 
 4. Disparagement of defense counsel
 
 18
 Cha claims that the government impermissibly disparaged defense counsel during its rebuttal argument. Because this objection was not made at trial, it is reviewed for plain error.
 
 
 19
 Specifically, Cha challenges the prosecutor's comments that defense's closing argument was "incredible" and stated "with a straight face" that Cha put money into Ryu's account to avoid income taxes. The prosecutor did not accuse Cha's attorney of lying; his use of the term "straight faced" merely pointed out that the attorney's argument was inconsistent with Cha's testimony and had no basis in the evidence.
 
 
 20
 More troubling are the prosecutor's statements that defense counsel "knows his own client's story makes no sense, absolutely no sense, and he knows you're going to believe Min Ryu."[3]
 
 
 21
 Even if the prosecutor's statement was improper it does not rise to the level of plain error.[4] "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." United States v. Young, 470 U.S. 1, 11-12 (1985). Such comments "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." Id. at 12. Here, the prosecutor's comments were brief, and the evidence against Cha substantial. The prosecutor's comments in this case do not rise to the level of impropriety evidenced in the cases Cha cites for support,[5] and they do not rise to the level of plain error.
 
 5. Shifting burden of proof
 
 22
 Cha argues that the government impermissibly "shifted the burden of proof" by commenting on Cha's failure to bring witnesses or documents in support of his claims. It is not improper for a prosecutor to comment on defendant's failure to produce exculpatory evidence, however, unless the comment is "phrased to call attention to defendant's own failure to testify." United States v. Lopez-Alvarez, 970 F.2d 583, 595-96 (9th Cir.) (citation and internal quotation marks omitted), cert. denied., 506 U.S. 989 (1992). Here, none of the challenged comments referenced Cha's testimony.
 
 6. Leading questions
 
 23
 Cha argues that the prosecutor's use of leading questions in his direct examination of the coconspirator witnesses made it appear that the witnesses were more definite in their testimony than they really were. We review for an abuse of discretion the trial court's decision to allow leading questions, and will reverse only if the use of leading questions denied Cha a fair trial. United States v. Castro-Romero, 964 F.2d 942, 943 (9th Cir.1992). Many of the leading questions that Cha cites involve preliminary or undisputed matters, or questions which were asked to clarify the witnesses' testimony to avoid jury confusion. A review of the record shows the leading questions were not so pervasive as to deny Cha a fair trial.
 
 7. Character evidence
 
 24
 Cha also argues that the government produced improper character evidence into the trial when it stated in closing argument that: Cha was a "power hungry, vindictive man, a man who always wants to be in control, a man who doesn't want to be crossed or cheated"; evidence showed that Cha lied; a defense witness was a "crooked businessman." Because no objection was made at trial, we review this argument for plain error.
 
 
 25
 Cha states that "a prosecutor may not disparage the character of the defendant or make assertions calculated to mislead the jury." Cha does not point to what part of the statements were "calculated to mislead the jury," however, and indeed all of the cited comments were based on permissible inferences from the evidence. It is not improper for a prosecutor to argue that the evidence shows defendant lied. Molina, 934 F.2d at 1444-46.
 
 8. Cumulative error
 
 26
 Finally, Cha argues that even if no single instance of prosecutorial misconduct requires reversal, "the cumulative effect of the prosecutor's actions deprived Mr. Cha of a fair trial." Cha has not shown that the prosecutor's actions in this case, when viewed in the context of the entire trial, more probably than not affected the verdict. Hinton, 31 F.3d at 824.
 
 III. Expert testimony
 
 27
 If an objection was made at trial, we review the admission of expert testimony for an abuse of discretion. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir.1995). If no objection was made, the testimony is reviewed for plain error. Id.
 
 A. Agent Smith's Testimony[6]
 
 28
 IRS Agent Smith testified that Cha's activities were consistent with money laundering of drug proceeds. An expert cannot "state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged...." Fed.R.Evid. 704. Smith testified that Cha's transactions were consistent with money laundering, but he never stated any opinion as to Cha's mental state. Admission of this testimony was proper. See United States v. Lockett, 919 F.2d 585, 590 (9th Cir.1990).
 
 
 29
 Smith also testified about IRS reporting requirements, and that Cha had not met those requirements. Cha argues that Smith's testimony improperly "described the law to the jury." The law Smith summarized was on background matters collateral to the jury verdict. Smith's testimony did not usurp the role of the judge or jury.
 
 
 30
 Cha argues that Smith's testimony about why drug dealers launder their proceeds was improper, as it was "a matter of ordinary experience," citing United States v. Montas, 41 F.3d 775, 782 (1st Cir.1994), cert. denied, 115 S.Ct. 1886 (1995).[7]
 
 
 31
 Like Montas, there was little probative value in having Smith testify that the reason drug dealers launder money is so they can spend it without being detected. Unlike Montas, however, there also was little prejudicial effect by admission of Smith's testimony. Because the probative value of the evidence was not outweighed by its prejudicial effect, the district court did not abuse its discretion in allowing the testimony. Cf. United States v. VonWillie, 59 F.3d 922, 929 (9th Cir.1995) (finding no abuse of discretion in admission of officer's lay testimony that: drug traffickers often use and possess firearms to intimidate buyers and protect drugs; the MK-11 is a particularly intimidating firearm; drug traffickers commonly kept weapons near their drugs).
 
 
 32
 Finally, Cha contends that Smith improperly bolstered the credibility of government witnesses because he repeated their testimony and based his conclusions on their testimony. An expert may base his opinion on evidence produced at trial, including testimony of other witnesses. United States v. Marchini, 797 F.2d 759, 765 (9th Cir.1986), cert. denied, 479 U.S. 1085 (1987).
 
 B. Agent Kim's Testimony
 
 33
 On rebuttal, Korean Customs Agent Byung Doo Kim testified that Cha's explanation of his currency transactions was "impossible" under Korean law.[8] Kim did not make any comments on whether another witness was lying, however. The jury was free to judge the inconsistent statements made by Kim and by Cha and Cha's supporting witness, and to make the ultimate credibility determination.
 
 IV. Coconspirator Hearsay Statements
 
 34
 Cha argues that the district court erred in admitting coconspirator hearsay statements. At trial, Cha was granted a standing challenge to the coconspirators' hearsay statements.
 
 
 35
 The question whether a statement constitutes coconspirator hearsay admissible under Fed.R.Evid. 801(d)(2)(E) is a question of law reviewed de novo. United States v. Layton, 855 F.2d 1388, 1398 (9th Cir.1988), cert. denied, 489 U.S. 1046 (1989). We review the admission of such statements for abuse of discretion. United States v. Peralta, 941 F.2d 1003, 1006 (9th Cir.1991), cert. denied, 503 U.S. 940 (1992).
 
 
 36
 A statement offered against a party is not hearsay if it is made by a coconspirator "during the course of and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). The following types of statements have been found to be in furtherance of a conspiracy:
 
 
 37
 statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of co-conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.
 
 
 38
 United States v. Nazemian, 948 F.2d 522, 529 (9th Cir.1991), cert. denied, 506 U.S. 835 (1992). A finding that a statement is made in furtherance of a conspiracy is reviewed for clear error. United States v. Williams, 989 F.2d 1061, 1067 (9th Cir.1993).
 
 
 39
 Cha challenges the admission of testimony by Mi Ahn; Ki Woon Kim; Tae Yong Choe; Leonard Kang; and Kwang Sun Kim. He argues that their statements were not in furtherance of a conspiracy because they were narratives of past events or future plans, United States v. Eubanks, 591 F.2d 513 (9th Cir.1979); or were in furtherance of uncharged conspiracies, or conspiracies which did not involve Cha, United States v. Fielding, 645 F.2d 719 (9th Cir.1981).
 
 
 40
 After carefully reviewing the record, we find no abuse of discretion in the district court's finding that the challenged statements were admissible under 801(d)(2)(E). Even if we were to find that one or two of the statements were improperly admitted, we would find the error harmless in light of the numerous other statements which were proper.
 
 
 41
 Cha also argues that some of the challenged testimony involved hearsay on hearsay. In the statements he challenges, however, both sets of hearsay are covered by the coconspirator exception to the hearsay rule.
 
 
 42
 V. Venue and Sufficiency of Evidence for Money Laundering
 
 A. Venue
 
 43
 Cha argues that venue in the Western District of Washington was improper for the money laundering counts. Because the venue argument was not raised at trial, it is waived. United States v. Powell, 498 F.2d 890, 891 (9th Cir.), cert. denied, 419 U.S. 866 (1974).
 
 
 44
 Cha argues that his motion in district court for a change of jurisdiction should be construed as a motion for change of venue. Venue and jurisdiction are separate issues, however, dealing with separate rules and statutes. See 18 U.S.C. § 1956(f) (jurisdiction); Fed.R.Crim.P. 18 (venue). When the prosecutor treated Cha's motion as one of venue, Cha's counsel specifically stated, "this is not an issue of venue, it's a resolution of jurisdiction." The trial court addressed the jurisdiction argument, but did not discuss venue.
 
 B. Sufficiency of the Evidence
 
 45
 Cha argues that there was insufficient evidence to convict him of money laundering because the government failed to prove that he had the intent to " 'conceal or disguise' the nature, location, source or control of the proceeds of an unlawful activity." There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Vgeri, 51 F.3d 876, 879 (9th Cir.1995) (citation omitted).
 
 
 46
 The government produced evidence that Cha was engaged in drug dealing, and in complex financial schemes designed to launder that money from drug dealing. Cha did not report currency he took out of the United States to U.S. Customs agents, and did not report foreign bank accounts on his tax returns. Cha did not make deposits of more than $10,000 cash in United States banks, which have reporting requirements, but took $600,000 in United States currency to a Hong Kong bank, which does not have reporting requirements. After depositing money in the Hong Kong bank, Cha transferred most of it back to the United States for investment in real estate.
 
 
 47
 Cha's complicated transactions provided sufficient evidence that a rational jury could find that Cha intended to conceal or disguise the "nature, location, or source" of illegal proceeds.
 
 
 48
 VI. Sentencing Enhancements for Leadership and Obstruction
 
 
 49
 The district court enhanced Cha's sentence four levels for exercising a leadership role, and two levels for obstruction of justice. Cha argues that both of the enhancements are based on insufficient findings.
 
 A. Leadership Role
 
 50
 The district court found that Cha was an "organizer" or "leader" of a criminal activity involving five or more persons under U.S.S.G. § 3B1.1(a). Whether Cha was an organizer or leader justifying enhancement under § 3B1.1 is a question of fact reviewed for clear error. United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.1990).
 
 
 51
 Cha argues that the court failed to make its factual basis for the enhancement clear on the record. The court adopted the findings of the PSR, however, which states that Cha "served as the leader or organizer of a criminal activity including" thirteen named individuals. This finding is sufficient.
 
 
 52
 Cha also argues that the enhancement was improper because the people that Cha organized were "customers" and thus cannot be counted as "participants" for a leadership enhancement. Because Cha did not make this objection to the district court, it is waived. United States v. Visman, 919 F.2d 1390, 1394 (9th Cir.1990), cert. denied, 502 U.S. 969 (1991).
 
 
 53
 Even if the objection had not been waived, it would not be successful. Although status as distributor does not warrant the leadership enhancement, Mares-Molina, 913 F.2d at 773 (9th Cir.1990) (finding leadership enhancement improper when there was no evidence defendant "exercised control or was otherwise responsible for organizing, supervising, or managing others in the commission of the offense"), Cha was more than a mere distributor. To determine whether defendant is a leader, the district court considers:
 
 
 54
 [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 55
 U.S.S.G. § 3B1.1 application note 4. The evidence at trial established that Cha exercised decision making authority in importing and purchasing ice; he recruited accomplices; and that he claimed a right to a large share of the proceeds. The conspiracy was large in scope, involving 819 or more kilograms of ice and profits of more than $18 million. Cha exercised control over others, for example, by ordering Yong Chang Yi to kidnap Sang Jin Cha to obtain repayment of $300,000 in stolen drug money. The district court did not err in finding that Cha exercised a leadership role.
 
 B. Obstruction of Justice
 
 56
 The district court applied a two level enhancement for obstruction of justice based on the court's finding that Cha testified untruthfully under oath. An enhancement for obstruction of justice is appropriate if the court finds that a defendant committed perjury. U.S.S.G. § 3C1.1 application note 3(b).
 
 
 57
 Cha argues that the district court's findings were inadequate to support the enhancement because the court failed to "make findings to support all the elements of a perjury violation." The independent findings necessary to establish perjury are that the witness gave false testimony under oath concerning a material matter, with the willful intent to provide false testimony. United States v. Dunnigan, 507 U.S. 87, 94-95 (1993).
 
 
 58
 The district court stated: "The testimony--I find that [Cha's] testimony was not truthful. I can't imagine any better way of obstructing justice than being untruthful under oath." The district court also adopted the findings of the PSR which states that during his testimony at trial, Cha denied conducting drug transactions with several named defendants and lied about material information. Together, these findings establish all of the elements necessary to support the enhancement. See Dunnigan, 507 U.S. at 95. The district court does not have to make findings as to the specific portions of defendant's testimony believed to be false. United States v. Arias-Villanueva, 998 F.2d 1491, 1512 (9th Cir.), cert. denied, 510 U.S. 937, and cert. denied, 510 U.S. 1001 (1993).
 
 VII. Ineffective Assistance of Counsel
 
 59
 Cha contends that he received ineffective assistance of counsel. Ineffective assistance claims generally are more properly raised by collateral attack because on direct appeal the record "often lacks a sufficient evidentiary basis as to 'what counsel did, why it was done, and what, if any, prejudice resulted.' " United States v. Quintero-Barraza, 78 F.3d 1344, 1347 (9th Cir.1995) (citation omitted), petition for cert. filed, (June 5, 1996) (No. 95-9280). We will review ineffective assistance claims on direct appeal only if the record is sufficiently developed to allow determination of the issue, or if the representation was so inadequate that Cha obviously was denied the Sixth Amendment right to counsel. United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir.1993).
 
 
 60
 Cha raises several acts of trial counsel which he alleges constitute ineffective assistance. The most serious incident is trial counsel's failure to move to suppress Cha's post-arrest statement to DEA Agent Yong Chin. On rebuttal, Chin testified for the government that while Cha was being booked Cha said, "If you have been investigating me that long, why didn't you arrest me when I was selling?"
 
 
 61
 Cha argues that there was substantial legal basis for suppressing the statement. When trial counsel was asked why he did not move to suppress the statement, he stated: "All I can fathom is Mr. Lundin would have been the attorney to have gotten the initial packet of information. When I received the Jencks material, which probably filled two of these banker boxes, I just didn't see it."
 
 
 62
 The record is insufficient for us to determine Cha's ineffective assistance claim. Although Cha's counsel admitted that he inadvertently did not file a motion to suppress, the government contends that had the motion been filed, the statement would have been found admissible. Without an evidentiary hearing, it is impossible to know whether Cha's statement would have been suppressed. See Edwards v. Arizona, 451 U.S. 477, 484-86 (1981) (once defendant invokes his Miranda rights, government must stop interrogating him, but not all post-Miranda statements are involuntary).
 
 
 63
 We also decline to review Cha's other alleged instances of ineffective assistance. The record is not sufficiently developed to allow a determination of "what counsel did, why it was done, and what, if any prejudice resulted," Quintero-Barraza, 78 F.3d at 1344, and the representation was not so inadequate that Cha obviously was deprived of his Sixth Amendment right to counsel. Necoechea, 986 F.2d at 1281.
 
 VIII. Cumulative Error
 
 64
 Even if certain comments of the prosecutor may have been improper, the error was negligible. Cha's claim that the cumulative effect of the error was so prejudicial as to warrant reversal is wholly unfounded. United States v. DeCruz, 82 F.3d 856, 868 (9th Cir.1996).
 
 CONCLUSION
 
 65
 Cha's conviction and sentence are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Seo's testimony actually came out on cross examination by defense counsel
 
 
 [2]
 No objection was made to these statements at trial, so they are reviewed for plain error
 
 
 [3]
 The government argues that such a statement is proper under the "invited reply" rule that a prosecutor may respond to a defense counsel's attack in order to "right the scale," citing United States v. Parker, 991 F.2d 1493, 1498 (9th Cir.), cert. denied, 510 U.S. 839 (1993). Righting the scale in this case, however, would allow the prosecutor to comment on the fact that defense counsel's argument was not based on the evidence; it would not invite a response that defense counsel had no faith in his client's testimony
 
 
 [4]
 "Plain error is error that is clear under the law and affects substantial rights," and Cha must prove that the error was prejudicial. United States v. Campbell, 42 F.3d 1199, 1204 (9th Cir.1994), cert. denied, 115 S.Ct. 1814 (1985). We will correct plain error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (citation and internal quotation marks omitted). We also will consider all circumstances at trial, including how strong the evidence against the defendant was, in applying the plain error standard. Id
 
 
 [5]
 See, e.g., United States v. Friedman, 909 F.2d 705, 709-10 (2d Cir.1990) (prosecutor stated that "While some people ... go out and investigate drug dealers and prosecute drug dealers and try to see them brought to justice, there are others who defend them, try to get them off, perhaps even for high fees."); United States v. McLain, 823 F.2d 1457, 1462 (11th Cir.1987) (prosecutor accused defense counsel of intentionally misleading jurors and of lying; this, coupled with other errors, required reversal); United States v. Murrah, 888 F.2d 24 (5th Cir.1989) (prosecutor stated that defense counsel had tried to hide a witness)
 
 
 [6]
 We review admission of this testimony for plain error
 
 
 [7]
 Because Cha's counsel objected to this testimony at trial, we review its admission for an abuse of discretion
 
 
 [8]
 Because Cha did not object at trial, we review for plain error