123 F.3d 1275
 71 Empl. Prac. Dec. P 44,984, 97 Cal. Daily
Op. Serv. 6954,
97 Daily Journal D.A.R. 11,259
Volker Keith MEINHOLD, Plaintiff-Appellee,
v.
UNITED STATES DEPARTMENT OF DEFENSE; United States
Department of the Navy, Defendant-Appellant.
 No. 96-56094.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 4, 1997.
Decided Aug. 28, 1997.
 
 Anthony J. Steinmeyer, Department of Justice, Washington, DC, for defendant-appellant.
 Robert Barnes, Kaye, Scholer, Fierman, Hays & Handler, LLP, Los Angeles, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California; Terry J. Hatter, District Judge, Presiding. D.C. No. CV-92-6044-TJH.
 Before BOOCHEVER, KOZINSKI and JOHN T. NOONAN, Jr., Circuit Judges.
 BOOCHEVER, Circuit Judge:
 Navy officer Keith Meinhold was discharged for stating that he was gay, although he later truthfully denied that he engaged in homosexual conduct. A previous panel of this court held that the Navy violated its regulations by discharging Meinhold without evidence of an expressed desire to engage in homosexual conduct. The district court awarded Meinhold attorney fees under the Equal Access to Justice Act, and the government appeals the award, the district court's finding of bad faith, and the amount of fees. We affirm.
 
 FACTS
 
 1
 Keith Meinhold, a Navy petty officer with twelve years of exemplary service, stated "I am in fact gay" on May 19, 1992, during an interview on ABC World News Tonight. The Navy immediately began discharge proceedings against Meinhold under then-existing military policy, which provided that a member "shall be separated" if "the member has stated that he or she is a homosexual," i.e., "a person ... who engages in, desires to engage in, or intends to engage in homosexual acts." DOD Directive 1332.14, 32 C.F.R. pt. 41, App. A (1981). The Navy discharged Meinhold on August 12, 1992.
 
 
 2
 Meinhold challenged his discharge in federal district court. The district court issued a preliminary injunction ordering his reinstatement. The Navy reinstated Meinhold. The Navy then filed an appeal of the preliminary injunction.
 
 
 3
 Meanwhile, the parties filed cross-motions for summary judgment in the district court. The district court granted Meinhold's motion, finding his discharge unconstitutional under the Equal Protection Clause because the Navy's policy of discharging gay servicemembers based on a statement of homosexual status alone was not "rationally related to its permissible goals." Meinhold v. United States Dep't of Defense, 808 F.Supp. 1455, 1457 (C.D.Cal.1993) ("Meinhold I" ). The district court also permanently enjoined the Department of Defense from denying enlistment to or discharging any person based on sexual orientation alone. Id. at 1458.
 
 
 4
 The Navy appealed, and another panel of this court affirmed in part. Meinhold v. United States Dep't of Defense, 34 F.3d 1469 (9th Cir.1994) ("Meinhold II" ). We avoided deciding the constitutional question, instead construing the regulation "to mandate separation due to a statement of homosexuality only when that statement itself indicates more than the inchoate 'desire' or 'propensity' that inheres in status." Id. at 1479. We affirmed the district court's grant of summary judgment to Meinhold on the discharge issue because Meinhold's statement "manifests no concrete, expressed desire to commit homosexual acts." Id. The Navy's presumption that Meinhold's statement meant that Meinhold desired or intended to engage in homosexual conduct "arbitrarily goes beyond what DOD's policy seeks to prevent." Id. at 1479-80. We also, however, vacated the district court's nationwide injunction, except to the extent it enjoined the Navy from discharging Meinhold. Id. at 1480.
 
 
 5
 Meinhold subsequently filed a motion for attorney fees under the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412, which entitles a party who substantially prevails in a civil action against the government to attorney fees unless the position of the government was "substantially justified." In July 1995, the district court awarded Meinhold $443,175.73 for hours spent in the litigation and on the EAJA fees application. The Navy appealed, and this court remanded to the district court for an explanation of reasons for the attorney fees award. [ER pp. 168-69]
 
 
 6
 The district court issued a memorandum opinion on May 14, 1996, explaining its reasons for the fee award: Meinhold had been discharged solely on his statement of personal status, "I am in fact gay." The court stated that the government did not have substantial justification for the discharge and for its defense of the discharge. The court also explained how it arrived at the amount of fees awarded.
 
 
 7
 The Navy appeals, arguing that its discharge of Meinhold and its litigation posture were substantially justified and that EAJA fees were therefore wrongly awarded, and that the district court's opinion did not sufficiently explain the fee amount.[1] We affirm.
 
 DISCUSSION
 I. Substantially justified
 
 8
 28 U.S.C. § 2412(d)(1)(A) provides that when a private litigant succeeds in a civil proceeding against the United States, the prevailing party must be awarded fees and expenses "unless the court finds that the position of the United States was substantially justified." The government's position is substantially justified when it "has a reasonable basis both in law and in fact," and the burden of showing that reasonable basis is on the United States. United States v. Rubin, 97 F.3d 373, 375 (9th Cir.1996) (quotations omitted). The "position" of the government includes the action on which the civil litigation is based, as well as the positions the government takes during the litigation. Oregon Natural Resources Council v. Madigan, 980 F.2d 1330, 1331 (9th Cir.1992).
 
 
 9
 We review the district court's decision that the government's position was not substantially justified for an abuse of discretion. We may reverse only if the district court based its decision that the Navy was not substantially justified "on an erroneous conclusion of law or when the record contains no evidence on which [it] rationally could have based that decision." Oregon Natural Resources Council v. Marsh, 52 F.3d 1485, 1492 (9th Cir.1995) (as amended) (quotations omitted). If the government's position violates the Constitution, a statute, or its own regulations, a finding that the government was substantially justified would be an abuse of discretion. Mendenhall v. National Transp. Safety Bd., 92 F.3d 871, 874 (9th Cir.1996); Madigan, 980 F.2d at 1332.
 
 
 10
 Mendenhall does not establish an ironclad rule, however. The issue before the Mendenhall court was the violation by the Federal Aviation Administration of its own policies, the interpretation of which was clear and not disputed. 92 F.3d at 875-76. The case on which Mendenhall relied, Yang v. Shalala, 22 F.3d 213 (9th Cir.1994), presented a situation where "the Secretary's position was based on violations of the Constitution, the [Social Security] Act and several SSA regulations." Id. at 217. Consequently it is not fair to conclude that every violation of a regulation by an agency stamps its position as unreasonable. The government may avoid EAJA fees if it can prove that the regulation it violated was ambiguous, complex, or required exceptional analysis. See Madigan, 980 F.2d at 1332; Pottgieser v. Kizer, 906 F.2d 1319, 1324 (9th Cir.1990); Southern Oregon Citizens Against Toxic Sprays v. Clark, 720 F.2d 1475, 1481 (9th Cir.1983).
 
 
 11
 A fair reading of the precedents suggests that we have been at some pains to respect the discretionary nature of the call made by the district judge who was most familiar with the case. We defer to familiarity. We discourage fee applications from turning into retrials and re-appeals of the principal case. With due observance of these considerations, we cannot say that the district judge in this case abused his discretion in holding that the government's position was not substantially justified.
 
 
 12
 The merits panel found that the Navy violated its own regulation in its discharge of Meinhold for the bare statement "I am in fact gay."
 
 
 13
 [T]he regulation ... can reasonably be construed to reach only statements that show a concrete, fixed, or expressed desire to commit homosexual acts despite their being prohibited.... The Navy's presumption that Meinhold desires or intends to engage in prohibited conduct on the basis of his statement alone therefore arbitrarily goes beyond what DOD's policy seeks to prevent. Accordingly, Meinhold's discharge on that basis cannot stand.
 
 
 14
 Meinhold II, 34 F.3d at 1479-80. The court noted that Meinhold "truthfully denied" that he had ever engaged in homosexual activity, and the Navy had stated before the discharge board "There are no allegations whatsoever of act. We're talking specifically about the classification, and not the act." Id. at 1475, 1477 n. 8.
 
 
 15
 We are bound by the previous panel's decision that the Navy violated its own regulation. Madigan, 980 F.2d at 1332 (panel reviewing EAJA award is bound by merit panel's holding and rationale). The Navy does not contend that the regulation was so ambiguous or complex that it was justified in its mistaken interpretation. In fact, on appeal the Navy returns to an argument squarely rejected by the Meinhold II panel: that an acknowledgement of status is equivalent to an admission of conduct.
 
 
 16
 The Meinhold II court examined the statute's language and found that it was "arbitrary" for the Navy to equate Meinhold's statement with prohibited conduct. The district court awarded fees, finding that the Navy's position lacked substantial justification. The Navy had the burden in the district court to show that its litigation posture was reasonable. The district court found that the Navy had not carried its burden, and we cannot say that "the record contains no evidence on which [it] rationally could have based that decision." Marsh, 52 F.3d at 1492 (quotations omitted).
 
 
 17
 The government argued that its decision to discharge Meinhold and its position throughout the subsequent litigation were both substantially justified because "all five courts of appeals to decide the validity of the former policy-including this Court-have uniformly sustained it against various constitutional challenges." [Blue Br. at 11] (Emphasis added.) This characterization of the case law existing at the time the district court awarded Meinhold fees is incorrect. Only Ben-Shalom v. Marsh, 881 F.2d 454, 464 (7th Cir.1989) explicitly held that it was constitutionally permissible to equate a statement of homosexuality with conduct ("Plaintiff's lesbian acknowledgement, if not an admission of its practice, at least can rationally and reasonably be viewed as reliable evidence of a desire and propensity to engage in homosexual conduct.").[2]
 
 
 18
 Cases subsequent to the decision in Meinhold II are not strong support for the government's position. Three construed the "don't ask, don't tell" regulations implemented in 1994, two years after Meinhold's discharge. Those regulations, unlike the regulations in place at the time of Meinhold's statement, are pursuant to a statute that explicitly provides that a statement such as "I am a homosexual" creates a rebuttable presumption that the servicemember engages in homosexual conduct or has the propensity or intent to do so. 10 U.S.C. § 654(b)(2). See Richenberg v. Perry, 97 F.3d 256 (8th Cir.1996); Able v. United States, 88 F.3d 1280, 1286 (2d Cir.1996); Thomasson v. Perry, 80 F.3d 915, 930 (4th Cir.) (en banc), cert. denied, --- U.S. ----, 117 S.Ct. 358, 136 L.Ed.2d 250 (1996). In a fourth, Steffan v. Perry, 41 F.3d 677, 698 (D.C.Cir.1994) (en banc) (as amended), the en banc court concluded that the plaintiff did not have standing to bring a constitutional challenge to the regulations in place at the time of Meinhold's discharge because the record showed that he "declared himself to be a 'homosexual' because he in fact engaged in homosexual conduct." Again, only Ben-Shalom declared, under the regulations applied to Meinhold, that it was constitutional to discharge a servicemember for merely stating that he or she was a homosexual, with no evidence of homosexual conduct. 881 F.2d at 458, 464.
 
 
 19
 We are not charged with determining the constitutionality of the regulation. Nor are we charged with determining in the first instance whether the government's position is substantially justified, which would renew an extensive debate regarding a regulation that is no longer in place. Our role is limited to determining whether the district court abused its discretion. The question is whether the district court was entirely without foundation, in law and in fact, for its decision awarding fees.
 
 
 20
 [T]he text of the statute permits, and sound judicial administration counsels, deferential review of a district court's decision regarding attorney's fees under the EAJA. [Such review] will implement our view that a "request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).
 
 
 21
 Pierce v. Underwood, 487 U.S. 552, 563, 108 S.Ct. 2541, 2548, 101 L.Ed.2d 490 (1988).
 
 
 22
 The dissent quotes from the district court opinion to support its conclusion that the district court erred as a matter of law in awarding fees to Meinhold. A careful reading of the dissent shows that the quotations come from the bad faith portion of the district court opinion, however, which did not form the basis of any fee award in the district court. See note 1, supra. Because those statements are in a portion of the opinion which we explicitly decline to address, we do not, as the dissent suggests, adopt by our affirmance any error of law the district court might have made in making the bad faith finding.
 
 
 23
 The dissent also seizes on these statements made in the context of the bad faith finding to suggest that we have decided a constitutional issue that is not before us, namely, whether the military may discharge members for saying they are homosexuals. A careful reading of our opinion shows that we address no such question. The district court reviewed Ninth Circuit and out-of-circuit precedent existing at the time of the underlying actions and litigation and our holding in Meinhold II and found that the Navy was not substantially justified in reading its regulations to allow it to discharge Meinhold based solely on his statement that he was gay. In affirming the district court, we express no opinion as to whether Meinhold could have been discharged under different regulations, an issue that we stated in Meinhold II should await the proper case for resolution. We also express no opinion, as the issue is not before us, on whether the Navy would have been substantially justified in discharging Meinhold under the "don't ask, don't tell" regulations that we recently construed as applied to homosexual conduct in Philips v. Perry, 106 F.3d 1420 (9th Cir.1997). We merely hold, consistent with our reading of Meinhold II, that the district court did not abuse its discretion in determining that the government was not substantially justified here, considering the time and place in which the underlying actions and litigation arose, and we affirm the award of fees.
 
 II. Fee amount
 
 24
 The Navy argues that the amount of fees awarded was wrong, and the district court's explanation was inadequate. This court reviews the decision regarding the amount of attorney fees for an abuse of discretion. Brown v. Sullivan, 916 F.2d 492, 495 (9th Cir.1990) (as amended).
 
 
 25
 The government spends fifteen pages, and Meinhold spends four, disputing the amount awarded, disagreeing on where the district court made a calculation error, and identifying various small and large discrepancies between the (various) fee applications and the eventual award. This exhaustive debate over the fee amount would require us to rule on the details of the award, and any monetary calculations we make would likely result in yet another appeal. The Supreme Court's caution in Hensley v. Eckerhart that a "request for attorney fees should not result in a second major litigation" militates against such micromanagement of a district court's fee award:
 
 
 26
 We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.
 
 
 27
 Hensley v. Eckerhart, 461 U.S. at 437, 103 S.Ct. at 1941.
 
 
 28
 The district court, after pruning nearly a quarter of the fees Meinhold originally sought, provided a "concise but clear explanation of its reasons for the fee award." Id. We hold that it did not abuse its discretion in determining the amount. Meinhold admits, however, that the district court's final calculations were off by $21,688.08. We therefore remand to the district court with instructions to amend its order to award fees in the reduced amount of $421,487.65.[3] [Red Br. p. 29]
 
 
 29
 Because we affirm the award of fees under the EAJA, Meinhold is entitled to attorney fees on this appeal. Love v. Reilly, 924 F.2d 1492, 1497 (9th Cir.1991) (party properly awarded fees in district court on EAJA application is also entitled to fees on appeal). On remand, the district court should also determine the amount of fees on appeal.
 
 
 30
 AFFIRMED AND REMANDED.
 
 
 31
 KOZINSKI, Circuit Judge, Dissenting.
 
 
 32
 The district judge awarded fees because he found that "the Navy's policy of discharging persons, based solely on their status as homosexuals, for the purported purpose of protecting the military mission, lacks any reasonable basis in law or fact." Appendix at 10804.[1] By affirming, the majority causes a conflict with four other circuits that have held the government may discharge members of the armed forces for saying they are homosexuals. See Steffan v. Perry, 41 F.3d 677, 686 (D.C.Cir.1994) (en banc); Ben-Shalom v. Marsh, 881 F.2d 454, 464 (7th Cir.1989); Woodward v. United States, 871 F.2d 1068, 1076 (Fed.Cir.1989); Rich v. Secretary of the Army, 735 F.2d 1220, 1229 (10th Cir.1984). Worse, the majority creates a conflict with the law of the case and the law of our circuit, as announced in Meinhold II, where we held that this is a close and difficult question which should not be decided in this case. Meinhold II, 34 F.3d 1469, 1479 (9th Cir.1994).
 
 
 33
 The majority does not acknowledge these conflicts, donning the mantle of deference to the district court. Maj. op. at 1278-80. But we review questions of law de novo. United States v. Gutierrez, 116 F.3d 412, 415 (9th Cir.1997). Where the district court premises its discretion on an error of law, we cannot affirm without adopting the district court's error. See United States v. Willett, 90 F.3d 404, 406 (9th Cir.1996). Doubtless, this is why the majority tries so hard to explain away the wall of authority upholding the government's right to discharge members of the armed forces who say they are homosexuals. Maj. op. at 1278-79. While my colleagues fail in this effort,[2] it is beside the point. We held in Meinhold II that this is a close question-so close we chose to give the regulation a narrowing construction rather than confront it. Meinhold II, 34 F.3d at 1479. The district court was not free to ignore this holding and decide for itself that the issue was settled and the Navy acted unreasonably in even arguing about it.[3]
 
 
 34
 The majority also seems to say that the fee award is justified because the Navy misinterpreted DOD Directive 1332.14, 32 C.F.R. Pt. 41, App. A (1981). Maj. op. at 1278-79. This rationale cannot support the award because it was not relied on by the district court. See United States v. Todd, 909 F.2d 395, 398-99 (9th Cir.1990). In any event, it stretches credulity to argue that the Navy was unreasonable in construing a regulation which authorizes the discharge of a serviceman who "has stated that he ... is a homosexual", 32 C.F.R. Pt. 41, App. A(1)(H)(1)(c)(2), as authorizing the discharge of a serviceman who has stated that he is a homosexual. See Steffan, 41 F.3d at 694. In Meinhold II, we adopted a cramped interpretation of the regulation to avoid what we saw as a tough constitutional question, not to correct a misreading by the Navy. Meinhold II, 34 F.3d at 1476 ("Thus, it is incumbent on us to see whether there is some way the regulation can be construed to resolve the matter on a nonconstitutional ground.").[4] The interpretation we adopted in Meinhold II was so original, it was not suggested even by Meinhold. How can the Navy possibly be unreasonable in giving its regulation a literal construction, one that no other court of appeals has rejected?[5]
 
 
 35
 The majority creates yet another conflict, this time with Bay Area Peace Navy v. United States, 914 F.2d 1224, 1231 (9th Cir.1990), which reversed a fee award because " 'difficult questions' were raised and there is an absence of adverse precedent on point." While the majority nitpicks the authorities on which the government relies, maj. op. at 10789-91, my colleagues do not come to grips with the fact that the government has never lost on this issue in any other circuit or the Supreme Court. On the other side of the ledger, the government had won a contrary ruling squarely on point, maj. op. at 1278-79, citing Ben-Shalom, and a handful of other victories which-even if slightly distinguishable (which they are not)-weigh in on the side of the government, not Meinhold's. Under the EAJA, the issue is not whether every case the government cites is on all fours with its position, but whether the weight of authority is so clearly against it that the government should have known better than to continue pressing the point. With not a single case before Meinhold II going the other way, there was indeed "an absence of adverse precedent on point." Bay Area Peace Navy requires us to reverse.
 
 
 36
 * * *
 
 
 37
 While it comes to us in the mundane garb of an attorney's fee application, the question presented is important: Is the government no longer entitled to argue in the courts of this circuit that it may remove self-proclaimed homosexuals from the armed services? The district court said quite clearly and explicitly-even vehemently-that the government is not entitled to litigate the question because the government's position is utterly unreasonable: "The Navy placed Meinhold in a position of having to litigate this action to prove what the Navy already knew-that his homosexual status was irrelevant to his performance of the military mission. It is unconscionable for any branch of government to continue to enforce a regulation or policy, knowing that the regulation lacks any merit or rational basis for its existence, and thereby, force citizens to litigate to enforce their constitutional rights." Appendix at 10805. This does not reflect the law of the case or the law of the circuit; it does not reflect the law of anywhere at all. We may disagree with the law, but we are bound to follow it. See Watkins v. United States Army, 837 F.2d 1428, 1452 (9th Cir.1988) (Reinhardt, J., dissenting) ("I am bound, however, as a circuit judge to apply the [law] as it has been interpreted by the Supreme Court and our own circuit, whether or not I agree with those interpretations."). The majority does not follow the law. I must respectfully dissent.
 
 APPENDIX
 
 38
 Meinhold v. Department of Defense, No. CV 92-6044 TJH (JRx)
 
 
 39
 Memorandum Opinion, May 14, 1996.
 
 
 40
 [Facts and Prevailing Party Determination Omitted]
 
 Substantial Justification
 
 41
 In evaluating the Navy's position that it was substantially justified in discharging Meinhold, the Court considered the Navy's reasonableness. See Kali v. Bowen, 854 F.2d 329 (9th Cir.1988). A position is substantially justified if it has "a reasonable basis in both in law and fact." Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490, 504-505 (1988). Moreover, the Navy had the burden of demonstrating substantial justification. See Flores v. Shalala, 49 F.3d 562, 569 (9th Cir.1995). Since the Navy did not demonstrate that its position was substantially justified, the Court's statement of supporting reasons need not be elaborate. United States v. 313.34 Acres of Land, 897 F.2d 1473 (9th Cir.1989). Nonetheless, the Court will elaborate.
 
 
 42
 The inquiry into the existence of substantial justification focuses on two questions: "[F]irst whether the [Navy] was substantially justified in taking its original action; and, second, whether the [Navy] was substantially justified in defending the validity of the action in court." Kali, 854 F.2d at 332.
 
 
 43
 The Navy relied primarily on four cases decided in other circuits to support its position that it was substantially justified in discharging Meinhold. However, in doing so, the Navy disregarded the Ninth Circuit's analysis in Pruitt v. Cheney, 963 F.2d 1160 (9th Cir.1991), a case more analogous to the facts here, where the Army discharged a homosexual on the basis of status. In Pruitt, the Circuit found that the Army officer had stated an equal protection claim, and held that there was no rational basis, established on the record, for the discrimination.
 
 
 44
 The Navy contends that it was substantially justified in disregarding Pruitt because the Ninth Circuit effectively overruled Pruitt in United States v. Harding, 971 F.2d 410 (9th Cir.1992). However, Harding was a criminal case involving the statutory classification of crack versus powder cocaine and the constitutionality of the sentencing guidelines as it related to those substances. Harding argued that the legislature, in establishing the statutory classification, needed to supply empirical evidence to support the rational relationship between the two substances and the disparate sentences for their possession. The Circuit held that the "burden falls on the party attempting to disprove the existences of a rational relationship between a statutory classification and a government objective." Harding, 971 F.2d at 413. Here, "the military's policy on homosexuality is not the act of the legislature but a set of administrative directives implemented by administrative rules." (Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment, p. 12, ln. 26--p.13, ln. 1). Moreover, Harding did not involve the substantial justification standard imposed by the EAJA.
 
 
 45
 Although Harding is not applicable here, Meinhold, at his discharge hearing, met the burden imposed by Harding. Meinhold provided evidence, including testimony from Naval officers, that he was an exemplary and outstanding sailor, that "his professionalism and leadership abilities, both in the air and on the ground are unparalleled, exceeding the routine performance of a First Class Petty Officer" (Navy Administrative Discharge Board Hearing Record ("HR") at 416), and that he was an "example for other [sailors] to emulate" (HR at 423). Additionally, Meinhold presented evidence that Naval officers "did not concern themselves with the sexual orientation of their subordinates, and that high achievers who were known to be gay, usually were protected by their commanding officers." (HR at 468). Furthermore, as long ago as 1957, reports commissioned by the Secretary of the Navy concluded that no factual data exists to support the Navy's position that homosexuals cannot acceptably serve in the military.
 
 
 46
 Additionally, the Navy's principal counsel at the hearing for reconsideration of the preliminary injunction, held on November 16, 1992, admitted that there was no scientific or sociological evidence that supports the Navy's position that homosexuals impair the military objective. (Transcript of reconsideration hearing, p. 22, ln. 11--16). Therefore, the testimony of Naval officers, Meinhold's evaluation reports, and the Navy's admission that it lacked evidence to support its position is proof that, not only did Meinhold meet the burden imposed by Harding, but also that the Navy was not substantially justified in discharging Meinhold based solely on his status. Hence, the Navy's policy bears no rational relationship to the Navy's stated objectives of protecting the accomplishment of the military mission. Finally, the Navy's contention that Harding overruled Pruitt, which was decided only one year prior, reads much more into Harding than the Ninth Circuit intended.
 
 
 47
 The Navy was not substantially justified in initiating the discharge proceeding against Meinhold merely because there were four other cases, decided in the Navy's favor in other circuits, involving facts similar to the facts here. The Navy relies on Pierce, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), for its contention that its string of successes in other circuits gave it substantial justification for bringing this action. The Navy asks this Court to rely on a test of objective indicia, which the Supreme Court rejected in Pierce:
 
 
 48
 Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose. Nevertheless, a string of losses can be indicative; and even more so a string of successes. Once again, however, we cannot say that this category of objective indicia is enough to decide the present case.
 
 
 49
 Pierce, 487 U.S. at 569, 108 S.Ct. at 2551, 101 L.Ed.2d at 507.
 
 
 50
 Additionally, whether the Ninth Circuit has addressed the issue is a component of an inquiry into substantial justification. Kali, 854 F.2d at 332 fn. 2. Prior to this action, the Ninth Circuit had decided Pruitt on equal protection grounds, yet, knowing this, the Navy proceeded against Meinhold in this circuit. Thus, the Navy's contention that this Court should look to a "string of successes" in other circuits lacks merit.
 
 
 51
 The Navy relied on Dronenburg v. Zech, 741 F.2d 1388 (D.C.Cir.1984), Rich v. Secretary of the Army, 735 F.2d 1220 (10th Cir.1984), Woodward v. United States, 871 F.2d 1068 (Fed.Cir.1989), and Ben-Shalom v. Marsh, 881 F.2d 454 (7th Cir.1989), in support of its argument that it had a "string of successes" which gave it substantial justification to discharge Meinhold. Dronenburg and Rich are distinguishable in that both cases were based on homosexual conduct, not status. As such, it was not reasonable for the Navy to rely on them as evidence of a "string of successes" in this matter, which involved status alone.
 
 
 52
 The Navy's reliance on Woodward and Ben-Shalom is, also, misplaced. Both cases relied upon Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), for their reasoning. The issue in Bowers was the constitutionality of a Georgia statue that criminalized consensual sodomy. The Supreme Court, in upholding the Georgia statute, held that the Constitution does not confer a fundamental right upon homosexuals to engage in sodomy. Bowers, 478 U.S. at 190, 106 S.Ct. at 2843, 92 L.Ed.2d at 145. Bowers never addressed the issue of whether a person's status as a homosexual, as opposed to conduct, was constitutionally protected.
 
 
 53
 In Woodward, the Federal Circuit apparently misapplied the reasoning in Bowers to equate homosexual status to conduct, and concluded that one's status as a homosexual implies that one engages in homosexual conduct. More importantly, the court in Woodward, in reviewing Woodward's right to privacy claim, stated that homosexual conduct is not one of the fundamental rights subject to heightened review under the due process clause. Meinhold's claim was based on the equal protection clause, not the due process clause, and furthermore, Meinhold was not accused of homosexual conduct. Therefore, the Navy's reliance on Woodward for substantial justification is misplaced.
 
 
 54
 Additionally, in Ben-Shalom, the Army refused to reenlist a reserve sergeant who was a lesbian. The refusal was based on the sergeant's proclamation that she was a homosexual. Though the Seventh Circuit acknowledged that there was no evidence of homosexual conduct, and the trial judge found that Ben-Shalom's status did not mean that she was likely to commit homosexual acts, the Circuit concluded that one can reasonably infer, from status alone, that Ben-Shalom had engaged, or probably will engage, in homosexual conduct. Here to, it appears that the court misapplied Bowers and assumed that status as a homosexual equates to constitutionally unprotected homosexual conduct.
 
 
 55
 Furthermore, the Seventh Circuit, in Ben-Shalom, recognized that the Ninth Circuit might not agree with its decision. Citing Judge Norris's concurring opinion, which was joined by Judge Canby, in Watkins v. United States Army, 875 F.2d 699 (9th Cir.1989), the Seventh Circuit recognized that an equal protection argument could be made, but it refused to apply it to the military. "On this controversial subject [whether homosexuals have the protection of the equal protection clause] unanimity is not to be expected as respectable arguments may be made on both sides of the issue." Ben-Shalom, 881 F.2d at 465. Therefore, it was not reasonable for the Navy to rely on Ben-Shalom in support of its argument for substantial justification, when the Seventh Circuit recognized that there was a difference of opinion with the Ninth Circuit on this issue.
 
 
 56
 In Cammermeyer v. Aspin, 850 F.Supp. 910, 918 (W.D.Wash.1994), a case where the Army cited Ben-Shalom in support of its argument that homosexual orientation can rationally and reasonably be viewed as reliable evidence of a desire and propensity to engage in homosexual conduct, the court found that the government's reliance on Ben-Shalom was misplaced, because the case incorrectly relied upon Bowers.
 
 
 57
 This Court held that Meinhold's statement, "I am in fact gay," was not equivalent to an admission of conduct, nor did it demonstrate a propensity to commit homosexual acts, and an assumption that it does would lack any basis in law or in fact. Thus, the Navy lacked substantial justification to discharge Meinhold and to oppose his attempts to be reinstated.
 
 Bad Faith
 
 58
 "[F]ederal courts, in the exercise of their equitable powers, may award attorney's fees when the interests of justice so require. Thus, it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' " Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702, 707 (1972). Here, the Navy's policy of discharging persons, based solely on their status as homosexuals, for the purported purpose of protecting the military mission, lacks any reasonable basis in law or fact. Thus, the interest of justice requires that Meinhold be awarded attorney's fees for bringing this action against an oppressive act of the Navy.
 
 
 59
 The Navy was aware that it lacked any basis for its position that one's sexual orientation effected one's ability to function in the military. As previously indicated, in 1957, the Secretary of the Navy commissioned a report concerning the revision of its policies, procedures and directives dealing with homosexuals. The report concluded that there was no "visible supporting data to support the conclusion that gays and lesbians cannot acceptably serve in the military." Report of the Board Appointed to Prepare and Submit Recommendations to the Secretary of the Navy for the Revision of Policies, Procedures and Directives Dealing with Homosexuality (Mar. 15, 1957).
 
 
 60
 In 1976, the Chief of Naval Personnel stated that "no empirical proof exists at this time [to support the Navy's contention that] homosexuality has an adverse effect upon the completion of the [military] mission." Memorandum from Chief of Naval Personnel to Judge Advocate General (Aug. 2, 1976).
 
 
 61
 A 1988 Department of Defense ("DOD") commissioned study concluded that "having a same-gender or an opposite gender orientation is unrelated to job performance in the same way as being left- or right-handed." Theodore R. Sarbin & Kenneth K. Eoyang, Nonconforming Sexual Orientation and Military Suitability, p. 33 (1988).
 
 
 62
 In 1989, another DOD commissioned study found that "homosexuals more closely resemble those who successfully adjust to military life than those who are discharged for unsuitability ... [and that] homosexuals show pre-service suitability-related adjustment that is as good or better than the average heterosexual." Michael A. McDaniel, Preservice Adjustment of Homosexual and Heterosexual Military Accessions, p. 19 (1989).
 
 
 63
 In 1990, Vice Admiral Joseph S. Donnell stated that "[e]xperience has ... shown that the stereotypical female homosexual in the Navy is hardworking, career-oriented, willing to put in long hours on the job and among the command's top professionals." Administrative Message from Commander, Naval Surface Fleet, Atlantic, to the Naval Surface Fleet, Atlantic (July 2, 1990).
 
 
 64
 Finally, Dr. Lawrence J. Korb, the former Assistant Secretary of Defense who was responsible for approving and implementing a policy of banning gays and lesbians, has declared "that there is no longer any justification for the armed services' ... ban on homosexuals serving in the military ... [that] each of the justifications offered in support of this policy is without factual foundation ... [and, therefore,] there is no longer any rational basis [for it]." Meinhold's exhibit 12 p. 874, pp 4 & 7.
 
 
 65
 Therefore, this Court found that the Navy's discharge of Meinhold was done in bad faith and to oppress Meinhold. The Navy placed Meinhold in a position of having to litigate this action to prove what the Navy already knew--that his homosexual status was irrelevant to his performance of the military mission. It is unconscionable for any branch of government to continue to enforce a regulation or policy, knowing that the regulation lacks any merit or rational basis for its existence, and thereby, force citizens to litigate to enforce their constitutional rights.
 
 
 66
 Furthermore, the behavior of the Navy in this lawsuit evidences bad faith. For example, the Navy's reluctance to obey this Court's order to reinstate Meinhold forced this Court to hold a contempt hearing. Additionally, after the Navy filed an appeal to the Ninth Circuit, it filed a simultaneous appeal to the Federal Circuit. One wonders what strategy the Navy was pursuing at that time, and what the result might have been, had the Federal Circuit not wisely stayed its involvement pending the Ninth Circuit's decision in this matter.
 
 
 67
 The Court recognizes that, traditionally, deference is given to the professional judgment of military authorities. Goldman v. Weinberger, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986). However, "one does not surrender his or her constitutional rights upon entering the military." Beller v. Middendorf, 632 F.2d 788, 810 (9th Cir.1980). The Navy's policy of discharging homosexuals based solely on status is similar to the historic racial discrimination and segregation that existed in the Armed Forces. The only basis for the policy is that some individual military personnel do not want to be around homosexuals. Mere negative attitudes, or fear, are constitutionally impermissible bases for discriminatory governmental policies. Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).
 
 
 68
 Furthermore, military regulations must follow basic constitutional imperatives. It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws. See Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959). The legitimacy of America's constitutional democracy derives, in part, from a fundamental rule of law and reason, that is, the government must obey its own laws and those laws must have some rational basis for their existence. The enforcement of rules and regulations that lack a rational basis, by any governmental agency, which force citizens to bring the government into court to enforce their constitutional rights, can only be viewed as an attempt by the government to coerce citizens into obeying illegal regulations or face enormous expense to vindicate their constitutional rights. Such behavior cannot be condoned, and the promulgation and enforcement of such rules can only be viewed as having been done in bad faith.
 
 
 69
 [Attorney's Fees Calculation Omitted]
 
 
 
 [1]
 The district court also found that the government had acted in bad faith in the discharge and in the course of the litigation. Because the fee award was not based on the bad faith determination, the bad faith finding is not necessary to the resolution of the attorney fees issue, and we decline to address it
 
 
 [2]
 Contrary to the dissent's statement in its footnote 2, neither Woodward v. United States, 871 F.2d 1068 (Fed.Cir.1989), nor Rich v. Secretary of the Army, 735 F.2d 1220 (10th Cir.1984) involves a mere statement of homosexuality. In Woodward, the Federal Circuit explicitly avoided deciding whether status alone could suffice to justify a discharge where "there is no claim by [the servicemember] that he is celibate." 871 F.2d at 1074 n. 6. In Rich, the Tenth Circuit allowed a discharge to stand when the servicemember was discharged "because during enlistment he falsely denied having engaged in homosexual activity." 735 F.2d at 1229
 
 
 [3]
 In many cases it would be impossible for an individual to obtain counsel willing to invest the time and effort expended by Meinhold's counsel in this case, without the EAJA's provision for attorney fees. As stated in the legislative history, the EAJA
 rests on the premise that certain individuals ... may be deterred from seeking review of, or defending against unreasonable government action because of the expense involved in securing the vindication of their rights. The economic deterrents to contesting governmental action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government. The purpose of the bill is to reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees ... against the United States, unless the Government action was substantially justified.
 H. Rep. No. 969-1418, at 5-6 (1980), reprinted in 1980 U.S.C.C.A.N. 4953, 4984.
 
 
 [1]
 So as to avoid any misunderstanding, I reproduce the analysis portion of the district court's order in an Appendix
 
 
 [2]
 The majority ignores Woodward and Rich because they did not "explicitly h[o]ld that it was constitutionally permissible to equate a statement of homosexuality with conduct," maj. op. at 10789, as had the Seventh Circuit in Ben Shalom. This is word play. Woodward and Rich both involved statements, not conduct; while Ben-Shalom was more explicit, Woodward and Rich were clear victories for the government. The majority tries to distinguish Richenberg v. Perry, 97 F.3d 256 (8th Cir.1996), Able v. United States, 88 F.3d 1280 (2d Cir.1996), and Thomasson v. Perry, 80 F.3d 915 (4th Cir.) (en banc), cert. denied, --- U.S. ----, 117 S.Ct. 358, 136 L.Ed.2d 250 (1996), as cases involving 10 U.S.C. § 654(b)(2)-the so-called Don't Ask, Don't Tell policy. I don't see why this matters. These cases all stand for the proposition that the government may constitutionally discharge members of the armed forces for saying they are gay, just as the government claimed in Meinhold II. Finally, the majority tries to distinguish Steffan because it was decided on standing grounds. This overlooks the lengthy passage in Steffan where the D.C. Circuit criticizes the reasoning of Meinhold II. 41 F.3d at 694 & n. 18. In determining whether the government was reasonable in defending Meinhold II, surely it is relevant what other circuits have said about our ruling there
 
 
 [3]
 The matter is made worse by the fact that in 1994 Congress adopted Don't Ask, Don't Tell, 10 U.S.C. § 654 (Supp.1994), which authorizes the discharge of servicemembers who say they are homosexuals. This policy raises the very legal issue decided by the district court in the fee application: whether it's OK to discharge a member of the service for saying he is gay. DADT lets the government infer homosexual conduct from an admission of homosexual status, precisely as the Navy did in Meinhold's case. The district court held that "the Navy's discharge of Meinhold was done in bad faith and to oppress Meinhold," based on its conclusion that homosexual status has no bearing on fitness for service in the armed forces. Appendix at 10804-5
 Will the opinion today be cited as striking down DADT insofar as it permits discharge based on status alone? I would not be surprised, as this is an area of the law where over-citing is endemic. For example, our ruling in Pruitt v. Cheney, 963 F.2d 1160, 1164 (9th Cir.1991), which held only that plaintiff's equal protection claim would survive a 12(b)(6) challenge, was cited by Meinhold and the district court as holding that the Navy's policy violates equal protection. Appellee's brief at 2, 22; Appendix at 10799, 10801.
 
 
 [4]
 In the usual case, courts may strike down an agency's interpretation of the statute it administers only if the agency's interpretation is unreasonable or contrary to the statute's plain meaning. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Courts must also defer to an agency's interpretation of a gap or ambiguity in its own regulations unless the interpretation is plainly wrong. See Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). See generally John F. Manning, Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules, 96 Colum. L.Rev. 612 (1996). Meinhold II was not the usual case, however: Chevron deference does not apply when a narrowing construction avoids a tough constitutional question. See Mistretta v. United States, 488 U.S. 361, 373 n. 7, 109 S.Ct. 647, 655 n. 7, 102 L.Ed.2d 714 (1989); Williams v. Babbitt, 115 F.3d 657, 662-63 (9th Cir.1997)
 
 
 [5]
 The majority violates the very rule it announces: "The government may avoid EAJA fees if it can prove that the regulation it violated was ambiguous, complex, or required exceptional analysis." Maj. op. at 1278 (emphasis added) (citing cases). Whatever else one may say about Meinhold II, surely the analysis there is nothing short of exceptional. See Steffan, 41 F.3d at 694 n. 18